Docket Nos. 89388, 89471, 89534 cons.–Agenda 7–May 2001.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. STANLEY BOCLAIR, Appellant.–THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JOE McCAIN, Appellee.–THE PEOPLE OF THE STATE OF ILLINOIS,

Appellant, v. EARNEST JOHNSON, Appellee.

Opinion filed August 29, 2002.

JUSTICE KILBRIDE delivered the opinion of the court:

The defendants in these three consolidated cases, Stanley Boclair, Joe McCain, and Earnest Johnson, were separately convicted of various unrelated crimes and are currently incarcerated. Their convictions were affirmed on direct review. Subsequently, each defendant filed a petition for post-conviction relief. The circuit court summarily dismissed each post-conviction petition. All three defendants appealed.

In 
Boclair
, 312 Ill. App. 3d 346, the Fourth District affirmed the dismissal. In 
McCain
, 312 Ill. App. 3d 529, the Fifth District reversed and held that the circuit court should not dismiss a petition as untimely or on waiver or 
res judicata 
grounds at the first stage of a post-conviction proceeding. Similarly, in 
Johnson
, 312 Ill. App. 3d 532, the Fifth District reversed and held that the circuit court should not dismiss a petition as untimely without first providing the State with an opportunity to waive the procedural defect.

We granted leave to appeal primarily to determine whether the circuit court can summarily dismiss a defendant’s post-conviction petition at the first stage of post-conviction proceedings as untimely. Additionally, we consider whether section 122–1(c) of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122–1(c) (West 1998)) is unconstitutionally vague and whether Public Act 83–942, eff. November 23, 1983, violates the single subject clause of the Illinois Constitution (Ill. Const. 1970, art. IV, §8(d)). We answer all three questions in the negative. We reverse the appellate court’s judgment in 
Boclair
 and affirm the appellate court’s judgment in 
McCain
 and 
Johnson
.

I. BACKGROUND

Boclair was convicted of murder and conspiracy to commit murder and was sentenced to death. On direct appeal, we vacated Boclair’s death sentence but affirmed his convictions. 
People v. Boclair
, 129 Ill. 2d 458 (1989). In November 1991, defendant was resentenced to natural life in prison. In October 1992, the circuit court summarily dismissed defendant’s 
pro se
 post-conviction petition and the appellate court affirmed. 
People v. Boclair
, 246 Ill. App. 3d 1119 (1993) (unpublished order under Supreme Court Rule 23). We subsequently denied Boclair’s petition for leave to appeal. 
People v. Boclair
, 152 Ill. 2d 562 (1993). In August 1998, defendant submitted a supplemental petition for post-conviction and post-judgment relief alleging that investigators obtained “newly discovered evidence” while pursuing a federal 
habeas corpus
 challenge. In November 1998, the circuit court summarily dismissed defendant’s supplemental petition as “patently without merit.” The circuit court did not address the timeliness requirement. The appellate court affirmed, finding that Boclair’s petition was untimely and that Boclair failed even to purport that he was not culpably negligent. 
Boclair
, 312 Ill. App. 3d 346.

McCain was convicted of two counts of attempted murder and three counts of aggravated assault in February 1989. After sentencing, McCain appealed and the appellate court affirmed. 
People v. McCain
, 207 Ill. App. 3d 1123 (1991) (unpublished order under Supreme Court Rule 23). We denied defendant’s petition for leave to appeal. 
People v. McCain
, 139 Ill. 2d 601 (1991). In August 1997, defendant filed a petition seeking post-conviction relief under the Act. The circuit court dismissed defendant’s petition in October 1997, finding that defendant’s petition was not timely filed, that the defendant was culpably negligent in not filing it on time, and that defendant failed to allege a constitutional violation that was not addressed on direct appeal or otherwise waived. The appellate court reversed and held that the circuit court should not dismiss a petition as untimely or on waiver or 
res judicata
 grounds at the first stage of a post-conviction proceeding. 
McCain
, 312 Ill. App. 3d 529.

Johnson was convicted of murder and robbery. He appealed and the appellate court reversed. 
People v. Johnson
, 138 Ill. App. 3d 980 (1985). On remand, defendant was again convicted. He appealed and the appellate court affirmed his conviction but remanded for resentencing. 
People v. Johnson
, 173 Ill. App. 3d 998 (1988). In March 1998, Johnson filed a petition for post-conviction relief. Johnson contended that his failure to seek timely post-conviction relief was not due to his own culpable negligence. Johnson based his petition in large part on the recent discovery of new evidence negating his conviction. The circuit court summarily dismissed the petition, finding that it was clearly filed beyond the statutory time limitation and was therefore meritless. The circuit court further found that Johnson failed to show that his delay in filing was not due to his own culpable negligence. The appellate court reversed and held that the circuit court may not dismiss a petition as untimely without first providing the State with an opportunity to waive the procedural defect. 
Johnson
, 312 Ill. App. 3d 532.

Boclair filed a petition for leave to appeal the Fourth District’s decision. Similarly, the State sought leave to appeal from the Fifth District’s decisions. We granted the parties’ respective petitions for leave to appeal and consolidated their cases.

II. ANALYSIS

On appeal to this court, defendants collectively argue that (1) the circuit courts erred in summarily dismissing their post-conviction petitions as untimely; (2) section 122–1(c) of the Act is unconstitutionally vague; and (3) Public Act 83–942, eff. November 23, 1983, amending the Post-Conviction Hearing Act, violates the single subject clause of the Illinois Constitution (Ill. Const. 1970, art. IV, §8(d)). We address each issue in turn.

A. Timeliness of Defendants’ Petitions

McCain and Johnson first contend that the circuit courts erred by summarily denying their post-conviction petitions as untimely during stage one of the post-conviction proceeding process. Boclair similarly argues that the appellate court, in affirming summary dismissal, improperly deemed his petition untimely. We consider this issue 
de novo
. 
People v. Coleman
, 183 Ill. 2d 366, 388-89 (1998). For the reasons that follow, we agree with defendants.

Our decision in 
People v. Wright
, 189 Ill. 2d 1 (1999), is generally instructive on this issue. There, we considered whether, in an appeal from the dismissal of a post-conviction petition, the State may challenge the petition as untimely. 
Wright
, 189 Ill. 2d at 10-11. We held that the time requirement in section 122–1 is a statute of limitation and not a jurisdictional prerequisite to a post-conviction proceeding. Section 122–1(c) states, in relevant part,

“(c) No proceedings under this Article shall be commenced more than 6 months after the denial of a petition for leave to appeal or the date for filing such a petition if none is filed or more than 45 days after the defendant files his or her brief in the appeal of the sentence before the Illinois Supreme Court *** or 3 years from the date of conviction, whichever is sooner, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence.” 725 ILCS 5/122–1(c) (West 1998).

In 
Wright
, defendant’s petition survived the first stage of the post-conviction proceedings. At the second stage, the circuit court granted the State’s motion to dismiss. On appeal, the defendant contended that the circuit court erred in granting the State’s motion. The State responded, in part, by claiming, for the first time, that defendant’s petition was untimely and that the circuit court lacked jurisdiction over the matter.

We rejected the State’s argument that section 122–1’s timing requirements are jurisdictional. Instead, section 122–1’s timing requirements are akin to a statute of limitation and can be waived or forfeited through procedural default.
 Wright
, 189 Ill. 2d at 10-11. We stated:

“[T]he time limitation found in section 122–1 reveals that it has more in common with statutes of limitations than it does with statutes conferring jurisdiction. The plain language of section 122–1 demonstrates that time is not an integral part of the remedy. *** In fact, if a petitioner can demonstrate that the late filing was not due to his culpable negligence, there is no time limit within which a petitioner must file his post-conviction petition. [Citations.] A safety valve that allows an unlimited time in which to file a post-conviction petition cannot be reconciled with a concept that makes time a condition of the liability or with a position that time is an inherent element of the right created. As a lack of culpable negligence permits the filing of a post-conviction petition regardless of the length of time that has passed, a lack of culpable negligence–not time–is the inherent element.” 
Wright
, 189 Ill. 2d at 8.

Consequently, because the State did not raise the statute of limitation issue in its second-stage motion to dismiss, the argument was forfeited on appeal. 
Wright
, 189 Ill. 2d at 11.

We further noted that to allow the State to raise a timeliness objection on appeal would permit the State in 
all
 cases to raise an “affirmative defense that the defendant may [have been] able to avoid by amending his petition.” 
Wright
, 189 Ill. 2d at 11. We further cautioned that we were “not limiting the [circuit] court’s ability, during the court’s initial review of noncapital petitions [citation], to dismiss the petition as untimely.” We also briefly referred to the court’s “duty” to do so under section 122–2.1(a)(2). 
Wright
, 189 Ill. 2d at 11-12.

 Some appellate court panels have interpreted this language in 
Wright
 as setting forth a “clear directive” that a circuit court may summarily dismiss petitions as untimely in the initial phase of a post-conviction petition (
People v. Lopez
, 317 Ill. App. 3d 1047, 1051 (2000); 
People v. Carroll
, 317 Ill. App. 3d 408 (2000)), as was held by the appellate court in 
Boclair
, 312 Ill. App. 3d 346. Other panels have classified this language as 
dicta
 and have held that the circuit court exceeds its authority when it dismisses a post-conviction petition as untimely in the initial stage without a determination that the petitions were frivolous or patently without merit (
People v. Whitford
, 314 Ill. App. 3d 335 (2000); 
People v.
 
Hill
, 313 Ill. App. 3d 362, 363-64 (2000)), which is what the panels held in both 
Johnson
, 312 Ill. App. 3d 532, and 
McCain
, 312 Ill. App. 3d 529. We hold that the Act does not authorize the dismissal of a post-conviction petition during the initial stage based on untimeliness.

To the extent that our opinion in 
Wright
 may be read as holding the contrary to be true, we now expressly overturn that portion of the 
Wright
 decision.

The Act provides a three-stage process for the adjudication of post-conviction petitions. In the first stage, the circuit court determines whether the post-conviction petition is “frivolous or is patently without merit.” 725 ILCS 5/122–2.1(a)(2) (West 2000). The State does not have an opportunity to raise any arguments against the petition during this summary review stage. 
People v. Gaultney
, 174 Ill. 2d 410 (1996). The circuit court is required to make an independent assessment in the summary review stage as to whether the allegations in the petition, liberally construed and taken as true, set forth a constitutional claim for relief. The court is further foreclosed from engaging in any fact finding or any review of matters beyond the allegations of the petition. 
People v. Coleman
, 183 Ill. 2d 366 (1998).

To survive dismissal at this stage, the petition must only present “the gist of a constitutional claim.” 
Gaultney
, 174 Ill. 2d at 418. If the petition is found to be “frivolous” or “patently without merit,” the court “shall dismiss the petition in a written order, specifying the findings of fact and conclusions of law it made in reaching its decision.” 725 ILCS 5/122–2.1(a)(2) (West 2000). If the petition survives the initial stage, the court may appoint counsel to represent an indigent defendant, and counsel will have an opportunity to amend the petition. 725 ILCS 5/122–1 
et seq.
 (West 2000); 
People v. Watson
, 187 Ill. 2d 448 (1999). The State then may file a motion to dismiss the petition. 725 ILCS 5/122–5 (West 2000); 
Gaultney
, 174 Ill. 2d at 418. If the State does not file a motion to dismiss or if the circuit court denies the State’s motion, the circuit court will proceed to the third stage and conduct an evidentiary hearing on the merits of the petition. 725 ILCS 5/122–6 (West 2000).

Section 122–2.1(a)(2) requires the circuit court to determine within 90 days of the filing of a post-conviction petition whether the petition is “frivolous or is patently without merit.” 725 ILCS 5/122–2.1(a)(2) (West 2000). Importantly, we note that this section is silent regarding timeliness. Rather, timeliness is addressed elsewhere, in section 122–1(c), instructing defendants as to the time periods for filing petitions. If this court can ascertain legislative intent from the plain language of the statute itself, that intent must prevail. 
Barnett v. Zion Park District
, 171 Ill. 2d 378 (1996). We will not depart from the plain language of the statute by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent. 
Barnett
, 171 Ill. 2d at 389.

Under a plain reading of section 122–2.1(a)(2), the circuit court may dismiss a post-conviction petition at the initial stage only if the petition is deemed to be “frivolous or *** patently without merit,” not if it is untimely filed. If the legislature intended for a trial judge to 
sua sponte
 dismiss a petition as being untimely, it would have so provided in section 122–2.1(a)(2) of the Act. Instead, the legislature provided in section 122–5 that the State may file a motion to dismiss. 725 ILCS 5/122–5 (West 2000). By addressing timeliness and frivolousness in separate provisions of the Act, the legislature plainly intended to draw a distinction between these two flaws of post-conviction petitions.

To accept the argument that the circuit court has the authority to dismiss a petition pursuant to section 122–2.1(a)(2) of the Act we would have to hold, contrary to the language of the Act, that the phrase “frivolous or *** patently without merit” encompasses untimely petitions. We will not ignore the Act’s language and adopt this interpretation. If a petition is untimely that does not necessarily mean that the petition lacks merit. “Frivolous” has been defined as “of little weight or importance: having no basis in law or fact.” Webster’s Third New International Dictionary 913 (1993); Black’s Law Dictionary 677 (7th ed. 1999); accord 
Anders v. California
, 386 U.S. 738, 744, 18 L. Ed. 2d 493, 498, 87 S. Ct. 1396, 1400 (1967) (legal points “arguable on their merits” are not frivolous). “[P]atently” means “CLEARLY, OBVIOUSLY, PLAINLY.” Webster’s Third New International Dictionary 1654 (1993); Black’s Law Dictionary 1147 (7th ed. 1999). “[M]erit” means “legal significance, standing, or importance.” Webster’s Third New International Dictionary 1414 (1993); Black’s Law Dictionary 1003 (7th ed. 1999). These terms do not include issues of timeliness.

Further, time is not an inherent element of the right to 
bring 
a post-conviction petition. 
Wright
, 189 Ill. 2d at 10-11. For that reason, time limitations in the Act should be considered as an affirmative defense and can be raised, waived, or forfeited, by the State. See 
Wright
, 189 Ill. 2d at 11-12. If an untimely petition demonstrates that a defendant suffered a deprivation of constitutional magnitude, a dutiful prosecutor may waive that procedural defect during the second stage of the post-conviction proceedings.

Moreover, when a circuit court determines whether a defendant is culpably negligent in filing his petition late, the circuit court makes an assessment of the defendant’s credibility. See 
McCain
, 312 Ill. App. 3d at 531. At this initial stage of the proceedings, however, the court should only determine whether the petition alleges constitutional deprivations. The process at the summary review stage measures a petition’s substantive virtue rather than its procedural compliance. See 
Johnson
, 312 Ill. App. 3d at 534. In determining an issue of credibility, the circuit court necessarily exceeds the boundary set by section 122–2.1(a)(1).

Finally, a defendant’s claim of actual innocence cannot be reviewed when a circuit court enters a summary dismissal 
sua sponte
, because the State does not have the opportunity to review the claim. The end result is that the State’s prerogative to proceed on the merits of the petition despite procedural flaws is usurped by the circuit court.

Claims of actual innocence may be raised in a manner other than in a post-conviction petition, including in a section 2–1401 motion. 735 ILCS 5/2–1401 (West 2000). Nonetheless, to allow the circuit court to dismiss summarily post-conviction petitions for failure to present evidence of actual innocence in a timely manner could lead to a miscarriage of justice. Although our criminal justice system needs finality in criminal litigation and judgments, it should not come at the expense of justice and fairness.

In sum, we conclude that the matter of untimeliness should be left for the State to assert during the second stage of the post-conviction proceedings. Therefore, the lower courts improperly deemed untimely defendants’ respective post-conviction petitions.

B. Vagueness Challenge

Defendants also argue that section 122–1(c)’s timing requirement is unconstitutionally vague and violates due process. We disagree.

As a threshold matter, we observe that defendants failed to raise this issue below. Nonetheless, a party may challenge the constitutionality of a statute at any time.
 People v. Wagener
, 196 Ill. 2d 269, 279 (2001). A statute challenged as unconstitutional enjoys a presumption of constitutionality. 
Tully v. Edgar
, 171 Ill. 2d 297, 304 (1996). If we reasonably can, we must construe a statute as constitutional and valid. 
Lee v. Nationwide Cassel, L.P.
, 174 Ill. 2d 540, 549 (1996). We will deem a legislative act unconstitutional when it is so vague, indefinite and uncertain that the courts are unable, by accepted rules of construction, to determine with any reasonable degree of precision the legislature’s intent.
 Spinelli v. Immanuel Lutheran Evangelical Congregation, Inc
., 118 Ill. 2d 389, 402 (1987), quoting 
Mayhew v. Nelson
, 346 Ill. 381, 387 (1931).

We have found statutes unconstitutionally vague where their “ ‘terms are so ill-defined that the ultimate decision as to [their] meaning rests on the opinions and whims of the trier of fact rather than any objective criteria or facts.’ ” 
Stern v. Norwest Mortgage, Inc
., 179 Ill. 2d 160, 168 (1997), quoting 
People v. Burpo
, 164 Ill. 2d 261, 265-66 (1995). Mathematical certainty in the language is, however, not required. 
People v. Warren
, 173 Ill. 2d 348, 356 (1996). If a statute can be made more definite by a reasonable construction, the court must give the statute that interpretation. 
People v. Lang
, 113 Ill. 2d 407, 455 (1986). A statute will not be rendered unconstitutionally vague merely because one could imagine hypotheticals that question the meaning of certain terms. 
People v. Izzo
, 195 Ill. 2d 109, 113 (2001); 
In re R.C.
, 195 Ill. 2d 291, 299 (2001); 
Schiller Park Colonial Inn, Inc. v. Berz
, 63 Ill. 2d 499, 513 (1976).

In the instant case, we note that we are not dealing with hypotheticals. Each defendant filed a post-conviction petition that was deemed untimely. Further, the lower courts held that each defendant failed to demonstrate an absence of culpable negligence in bringing his respective petition.

Section 122–1(c) of the Post-Conviction Hearing Act reads as follows:

“No proceedings under this Article shall be commenced more than 6 months after the denial of a petition for leave to appeal or the date for filing such a petition if none is filed or more than 45 days after the defendant files his or her brief in the appeal of the sentence before the Illinois Supreme Court (or more than 45 days after the deadline for the filing of the defendant’s brief with the Illinois Supreme Court if no brief is filed) or 3 years from the date of conviction, whichever is sooner, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence.” 725 ILCS 5/122–1(c) (West 2000).

Defendants first argue that section 122–1(c) is vague because it is a run-on sentence and presents several alternative deadlines, many with triggering dates not defined in section 122–1(c) but, rather, defined by supreme court rules. Thus, defendants argue, one must have a certain familiarity with the supreme court rules in order to determine the applicable deadline. We reject defendants’ contention on this point.

The argument that a petitioner must have some familiarity with supreme court rules falls well short of a valid attack on section 122–1(c)’s constitutionality. Virtually 
any
 motion or petition filed in a court requires a degree of knowledge with respect to supreme court rules and various procedural rules. Besides, it is well settled that “[a]ll citizens are presumptively charged with knowledge of the law.” 
Atkins v. Parker
, 472 U.S. 115, 130, 86 L. Ed. 2d 81, 93, 105 S. Ct. 2520, 2529 (1985). Accord 
Pyle v. Ferrell
, 12 Ill. 2d 547, 555 (1958) (stating that “ignorance of the law or legal rights will not excuse delay in bringing suit”).

It may be true that section 122–1(c) is difficult for a defendant or other layperson to understand. We will not, however, deem a statute unconstitutionally vague merely because it contains long sentences or complex language. 
People v. Conlan
, 189 Ill. 2d 286, 292-93 (2000). If we held that statutes with long and complex sentences were inherently vague, our courts would be invalidating statutes faster than the legislature could enact statutes.

Defendants also support their argument that the deadlines are ambiguous by pointing to a conflict between the districts of our appellate court on the issue of when a sentence is final. Defendants refer to the disagreement between the Fourth District’s opinion in 
People v. Ivy
, 313 Ill. App. 3d 1011 (2000), and the Second District’s opinion in 
People v. Hager
, 314 Ill. App. 3d 951 (2000). We granted Hager’s petition for leave to appeal and that cause is currently pending in this court. People v. Hager, No. 90115. Defendants argue that 
pro se
 litigants cannot be expected to understand a statute that appellate court panels cannot consistently discern. Again, we reject defendants’ contention on this point. The fact that a statute might be susceptible of misapplication or varying interpretations does not necessarily make it unconstitutional. 
Stern v. Norwest Mortgage, Inc
., 179 Ill. 2d 160, 168 (1997); 
Stein v. Howlett
, 52 Ill. 2d 570, 580 (1972).

Finally, defendants argue that no decision has elucidated the meaning of “culpable negligence” or set standards for how to establish its absence. Since the statute and case law provide no guidance as to what a petitioner must do to satisfy this standard, the standard is unconstitutionally vague. Again, we disagree.

We conclude that the phrase “culpable negligence” is not unconstitutionally vague. The absence of statutory definitions of a few terms does not render a statute void for vagueness. 
People v. Anderson
, 148 Ill. 2d 15, 28 (1992). As noted previously, language does not possess mathematical or scientific precision, and courts will give undefined statutory terms their plain and ordinary meaning. 
Anderson
, 148 Ill. 2d at 28. Culpable negligence has been defined as “[n]egligent conduct that, while not intentional, involves a disregard of the consequences likely to result from one’s actions.” Black’s Law Dictionary 1056 (7th ed. 1999). Culpable negligence has also been defined as “something more than negligence” involving “an indifference to, or disregard of, consequences.” 65 C.J.S. 
Negligence
 §19 (2000). Accord 1 R. Rawle, Bouvier’s Law Dictionary 736 (3d rev. 1914) (stating that “culpable neglect would seem to convey the idea of neglect for which he was to blame as is ascribed to his own carelessness, improvidence or folly”).

Our courts have interpreted the “culpable negligence” phrase consistently with these definitions. In 
People v. Wilson
, 143 Ill. 2d 236, 248 (1991), this court impliedly equated culpable negligence with recklessness. We approvingly cited an opinion of the highest court of the State of New York describing culpable negligence as a “ ‘conscious choice of a course of action, in disregard of the consequences’ ” that might follow. 
Wilson
, 143 Ill. 2d at 248, quoting 
People v. Decina
, 2 N.Y.2d 133, 140, 138 N.E.2d 799, 803-04, 157 N.Y.S.2d 558, 565 (1956).

The culpable negligence phrase also appears in several state statutes and court rules (
e.g.
, 55 ILCS 5/3–12013, 3–14044 (West 2000) (Counties Code); 65 ILCS 5/10–1–40 (West 2000) (Illinois Municipal Code); 70 ILCS 1210/30 (West 2000) (Park System Civil Service Act); 70 ILCS 1215/33 (West 2000) (Park Annuity and Benefit Fund Civil Service Act); 70 ILCS 2605/4.33 (West 2000) (Metropolitan Water Reclamation District Act); 110 ILCS 70/46 (West 2000) (State Universities Civil Service Act); 725 ILCS 5/122–1(c) (West 2000) (Post-Conviction Hearing Act); 750 ILCS 50/5 (West 2000) (Adoption Act); 188 Ill. 2d R. 606(c) (Supreme Court Rule 606(c)) and, in interpreting those statutes and rules, Illinois courts have almost uniformly held that culpable negligence entails something greater than ordinary negligence.

For example, under section 2–1401 of the Code of Civil Procedure (735 ILCS 5/2–1401 (West 2000)), courts must often determine whether litigants have exercised due diligence or, conversely, have willfully disregarded the process of the court or were so indifferent to it that they should be chargeable with culpable negligence. See 
Pronto Two Ltd. v. Tishman Speyer Monroe Venture
, 274 Ill. App. 3d 624, 629 (1995); 
Klein v. Steel City National Bank
, 212 Ill. App. 3d 629, 638 (1991); 
Cunningham v. Miller’s General Insurance Co.
, 188 Ill. App. 3d 689, 694 (1989); 
Verson Allsteel Press Co. v. Mackworth Rees, Division of Avis Industrial, Inc.
, 99 Ill. App. 3d 789 (1981).

Likewise, other jurisdictions have defined “culpable negligence” in similar contexts. For example, in 
Holway v. Ames
, 100 Me. 208, 60 A. 897 (1905), the Supreme Judicial Court of Maine defined “culpable neglect” in an analogous context as “less than gross carelessness, but more than the failure to use ordinary care.” 
Holway
, 100 Me. at 211, 60 A. at 898 In other contexts, other courts have defined culpable negligence as something more than mere neglect or more than a mere failure to use ordinary care. 
E.g
., 
Ross v. Baker
, 632 So. 2d 224, 226 (Fla. App. 1994) (holding that “[c]ulpable negligence is negligence of a gross and flagrant character which evinces a reckless disregard for the safety of others”); 
State v. Giordano
, 138 N.H. 90, 95, 635 A.2d 482, 484 (1993) (stating that “[c]ulpable negligence is something more than ordinary negligence, mere neglect, or the failure to use ordinary care–it is negligence that is censorious, faulty or blameable”).

We conclude that the phrase “culpable negligence” is not so imprecise as to render it unconstitutionally vague. We find that the “culpably negligent” standard contained in section 122–1(c) contemplates something greater than ordinary negligence and is akin to recklessness.

C. Single Subject Challenge

Finally, defendants argue that Public Act 83–942, eff. November 23, 1983, amending the Post-Conviction Hearing Act, violates the single subject rule of the Illinois Constitution (Ill. Const. 1970, art. IV, §8(d)). This argument has been rejected by every Illinois appellate court panel that has considered it. See 
People v. Vilces
, 321 Ill. App. 3d 937, 944-45 (2001); 
People v. Sharpe
, 321 Ill. App. 3d 994, 997 (2001); 
People v. Dorris
, 319 Ill. App. 3d 579, 585 (2001); 
People v. Jones
, 318 Ill. App. 3d 1189, 1193 (2001); 
People v. Roberts
, 318 Ill. App. 3d 719, 733-34 (2000). For the reasons that follow, we similarly find no single subject rule violation.

We again note that defendants failed to raise this issue in the courts below. Nonetheless, constitutional challenges to a statute may be raised at any time, and we will consider the merits of defendants’ claim. 
Wagener
, 196 Ill. 2d at 279. As noted previously, a statute challenged as unconstitutional enjoys a presumption of constitutionality. 
Tully
, 171 Ill. 2d at 304. The single subject rule mandates that “[b]ills, except bills for appropriations and for the codification, revision or rearrangement of laws, shall be confined to one subject.” Ill. Const. 1970, art. IV, §8(d). The rule prevents passage of legislation that, if standing alone, could not muster the necessary votes for enactment. 
Geja’s Cafe v. Metropolitan Pier & Exposition Authority
, 153 Ill. 2d 239, 258 (1992).

In this context, courts must liberally construe the term “subject” in favor of upholding the legislation. 
People v. Reedy
, 186 Ill. 2d 1, 8-9 (1999); 
People v. Dunigan
, 165 Ill. 2d 235, 255 (1995). The matters included in the enactment must, however, have a natural and logical connection to the single subject. 
People v. Malchow
, 193 Ill. 2d 413, 427 (2000). In other words, while the legislature is free to choose subjects comprehensive in scope, the single subject requirement may not be circumvented by selecting a topic so broad that the rule is evaded as “a meaningful constitutional check on the legislature’s actions.” 
Johnson v. Edgar
, 176 Ill. 2d 499, 515-18 (1997). There is no additional requirement that the individual provisions be related to each other.
 Arangold Corp. v. Zehnder
, 187 Ill. 2d 341, 356 (1999).

The dispositive question is whether they relate to a single subject. 
Premier Property Management, Inc. v. Chavez
, 191 Ill. 2d 101, 112-14 (2000). A determination of whether a public act runs afoul of the single subject rule necessitates a two-step analysis. First, we must determine whether the act, on its face, involves a legitimate single subject. 
People v. Sypien
, 198 Ill. 2d 334, 339 (2001). Second, we must discern whether the various provisions within an act all relate to the proper subject at issue. 
Sypien
, 198 Ill. 2d at 339.

Considering the first tier of the analysis, the title of Public Act 83–942 indicates that it relates to matters of criminal justice and correctional facilities. Defendants base their argument in large part on this title and argue that criminal justice and correctional facilities are two separate subjects and therefore cannot be addressed in one act. We disagree.

First, we reject defendants’ heavy reliance on Public Act 83–942’s title to support their claim. In
 Malchow
, 193 Ill. 2d at 428-29, we noted that an act’s title is not necessarily dispositive of its content or its relationship to a single subject. Otherwise, nothing would be left of the single subject rule beyond the creativity of legislative drafters to make titles of acts as broad as possible.
 People v. Pitts
, 295 Ill. App. 3d 182, 189 (1998). Even if we were to focus our analysis on Public Act 83–942’s title, “An Act in relation to criminal justice and correctional facilities,” we would be inclined to reject defendants’ argument on this point. In
 Malchow
, 193 Ill. 2d at 428-29, we reviewed Public Act 89–8, eff. March 21, 1995, and its virtually identical title to that of Public Act 83–942: “An Act in relation to criminal and correctional matters.” We concluded in 
Malchow
 that Public Act 89–8 was not so broad as to violate the single subject rule.

Here, looking beyond the title, we conclude that, on its face, Public Act 83–942 relates to a single subject: the criminal justice system. Public Act 83–942 contains five substantive sections and amends several different statutes. As we more fully examine in step two of our analysis, section 1 of Public Act 83–942 pertains to substantive criminal law matters. Section 2 generally addresses administrative aspects of the correctional system pertaining to construction of correctional facilities. Sections 3, 4, and 5 also relate to the building and maintenance of correctional facilities. As previously noted, the subject of criminal justice and correctional facilities, or, more succinctly, the criminal justice system, is one that we have already deemed legitimate for single subject purposes. 
Malchow
, 193 Ill. 2d at 428-29. We find no reason to depart from that holding today. Therefore, with regard to step one, we find that Public Act 83–942 involves a single, facially legitimate subject.

With respect to the second tier, we conclude that a substantive analysis of Public Act 83–942 indicates that each provision relates to the proper subject of the criminal justice system. Section 1 broadened the definition of “public official” in section 12–9 of the Criminal Code, and 
made it a crime to threaten a public official
. Pub. Act 83–942, §1, eff. November 23, 1983, amending Ill. Rev. Stat. 1983, ch. 38, par. 12–9(b)(1). Additionally, section 1 added section 122–2.1 of the Act, 
and established the first-stage post-conviction petition dismissal provision of the Act
. Pub. Act 83–942, §1, eff. November 23, 1983, adding Ill. Rev. Stat., 1984 Supp., ch. 38, par. 122–2.1.

Section 2 implemented amendments to the Unified Code of Corrections by (1) expanding the powers and duties of the Department of Corrections (Corrections) to authorize the Department of Central Management Services (Central Management) to accept bids for the
 construction, remodeling, or conversion of a structure to serve as a correctional facility 
(Pub. Act 83–942, §2, eff. November 23, 1983, amending Ill. Rev. Stat. 1983, ch. 38, par. 1003–2–2(c)); (2) requiring Corrections to prepare and present to the General Assembly quarterly reports detailing numerous specific administrative aspects of all 
correctional facilities
, including: the number of inmates in each facility; classification of each facility’s inmates by the nature of their offense; educational and vocational programs available at each facility; present inmate capacity levels; projected admissions, exits, and capacity levels; and the ratio of inmates to employees in each facility (Pub. Act 83–942, §2, eff. November 23, 1983, adding Ill. Rev. Stat., 1984 Supp., ch. 38, par. 1003–5–3.1); (3) requiring the Governor to give the General Assembly notice of any site selected for 
construction of a correctional facility
 before releasing such information to the public or to private individuals (Pub. Act 83–942, §2, eff. November 23, 1983, adding Ill. Rev. Stat., 1984 Supp., ch. 38, par. 1003–7–2b); (4) prohibiting Corrections from promulgating standards
 mandating minimum-floor-space requirements for individual inmates
 in county and municipal jails and houses of correction (Pub. Act 83–942, §2, eff. November 23, 1983, amending Ill. Rev. Stat. 1983, ch. 38, par. 1003–15–2(a)); and, (5) 
amending the powers and responsibilities of members of the Criminal Sentencing Commission
 with respect to term length, voting powers and expenditures (Pub. Act 83–942, §2, eff. November 23, 1983, amending Ill. Rev. Stat. 1983, ch. 38, par. 1005–10–1, repealed by Pub. Act 83–1257, art. 12, §12–6, eff. September 30, 1984).

Section 3 of Public Act 83–942 amends section 11–74–2 of the Illinois Municipal Code by expanding the definition of “industrial project” to include “
construction, remodeling or conversion
 
of a structure to be leased to the Illinois Department of Corrections
 
for the purposes of its serving as a correctional institution or facility
 pursuant to *** the [Unified Code].” (Emphasis added.) Pub. Act 83–942, §3, eff. November 23, 1983, adding Ill. Rev. Stat. 1983, ch. 24, par. 11–74–2(1)(c).

Section 4 of Public Act 83–942 implements a similar amendment to section 2 of the Industrial Building Revenue Bond Act requiring 
bidding on prison projects
. (Emphasis added.) Pub. Act 83–942, §4, eff. November 23, 1983, adding Ill. Rev. Stat. 1983, ch. 85, par. 872(b)(3).

Section 5 of Public Act 83–942 amends section 67.02 of the Civil Administrative Code, expanding the powers and duties of Central Management to include entering “into an agreement with a municipality or county to
 construct, remodel or convert a structure for the purposes of its serving as a correctional institution
.” (Emphasis added.) Pub. Act 83–942, §5, eff. November 23, 1983, amending Ill. Rev. Stat. 1983, ch. 127, par. 63b13.2.

We acknowledge that these sections do not relate directly to one another in the narrow sense. The dispositive question is, however, not whether amendments relate to each other; rather, the issue is whether they relate to a single subject. 
Arangold
, 187 Ill. 2d at 356; 
Chavez
, 191 Ill. 2d at 112-14.

We hold that Public Act 83–942 satisfies that requirement. Section 1 addresses substantive criminal law and section 2 addresses administrative aspects of the correctional system. Unquestionably, substantive criminal law and correctional system administration fall squarely under the umbrella of the criminal justice system. Sections 3, 4, and 5 relate to the construction and maintenance of prisons. Again, construction and maintenance of correctional facilities are direct components of the criminal justice system. As our appellate court has observed, the definition of “criminal justice system” includes substantive criminal law as well as all matters concerning corrections. 
People v. Dixon
, 308 Ill. App. 3d 1008, 1014 (1999); 
People v. Dorris
, 319 Ill. App. 3d 579, 585 (2001).

In 
Malchow
, we similarly concluded that criminal and correctional matters constituted one subject for purposes of the single subject rule. There, we examined a public act far more broad and sweeping than the one at issue here. The amendments in that case altered over a dozen seemingly unrelated statutes including the Medical Practice Act of 1987, the Code of Civil Procedure, and the Civil Administrative Code. Upon closer inspection, the amendments were indeed related to the single subject of criminal and correctional law. On that basis, we held that Malchow failed to meet his substantial burden of demonstrating that Public Act 89–8’s amendments had no natural and logical connection. 
Malchow
, 193 Ill. 2d at 428-29. We make the same finding in this case. We conclude that Public Act 83–942 does not violate the Illinois Constitution’s single subject rule.

III. CONCLUSION

We find that McCain’s and Johnson’s respective post-conviction petitions were improperly summarily dismissed as untimely. We therefore affirm the appellate court’s judgments in 
McCain
 and 
Johnson
. We further find that the appellate court improperly relied on timing issues when it affirmed the circuit court’s dismissal in 
Boclair
. We therefore reverse the appellate court’s judgment in 
Boclair
 and remand to that court to review the circuit court’s stated reasons for dismissing Boclair’s petition. We make no comment on the sufficiency of the allegations raised by any of the defendants in their respective petitions.

We further find that section 122–1(c) of the Post-Conviction Hearing Act is not unconstitutionally vague. Finally, we find that Public Act 83–942 does not violate the single subject rule.

No. 89388–Reversed and remanded.

No. 89471–Affirmed.

No. 89534–Affirmed.

JUSTICE FREEMAN, specially concurring:

I agree with the thoughts expressed by Justice McMorrow and join in her separate opinion. However, I write separately to note some concerns that I have with respect to the Post-Conviction Hearing Act.

The appeals in this consolidated case arise from the fallout from this court’s opinion in 
People v. Wright
, 189 Ill. 2d 1 (1999). In 
Wright
, this court was asked to determine whether section 122–1 of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122–1 (West 2000)), which contains several time provisions for filing petitions, was jurisdictional in nature or was an ordinary statute of limitations. A majority of the court chose the latter. The court, having ruled that the time provisions constituted a statute of limitations, nevertheless stated that the circuit court may dismiss a petition during the summary stage of the post-conviction proceedings if the petition is untimely and fails to assert a lack of culpable negligence. That statement, was, of course, at odds with the holding that the State had to assert the affirmative defense of the statute of limitations, but the court never acknowledged this tension in its opinion. As a result, our appellate court has struggled greatly with the following question: Can the circuit court, 
sua sponte
, raise untimeliness at the first stage of the post-conviction process?

Today’s opinion settles the confusion wrought by 
Wright
. We know now, with certainty, that the time provisions contained in section 122–1 constitute an ordinary statute of limitations that can only be raised by the State and not by the circuit court 
sua sponte
. In so holding, the court reaffirms one of the linchpins to the analysis contained in 
Wright
–that time is not an inherent element of the right to bring a post-conviction petition. Slip op. at 8. I disagreed with that principle in 
Wright
 and continue to do so today. As I noted in my dissent in 
Wright
, the General Assembly has, over the years, shortened the time within which a post-conviction petition may be brought, absent the lack of culpable negligence. At one time, the Act allowed for the filing of a petition up to 20 years after the rendition of a final judgment in a criminal proceeding. Subsequently, the legislature reduced the time period to 10 years. As of January 1, 1996, the General Assembly again amended the section to require that the petition be filed within 45 days of the appellant’s brief on direct appeal or three years from the date of conviction, whichever is sooner. In light of the direction the General Assembly has taken in decreasing the time period in which a post-conviction petition may be filed, I cannot agree that time is not an element to this legislatively created relief.

The court today relies on the plain language of section 122–2.1 to hold that if “the legislature intended for a trial judge to 
sua sponte
 dismiss a petition as being untimely, it would have so provided in section 122–2.1(a)(2) of the Act.” Slip op. at 7. Thus, because timeliness is not listed in section 122–2.1, the court reasons that the legislature did not intend for timeliness to be assessed during the summary dismissal stage. In my view, a petition that is filed outside the time provisions contained in section 122–1 has “no basis in law.” It falls under the court’s definition of a “frivolous” petition (slip op. at 7) and is thus subject to dismissal at the summary stage. For this reason, I find the court’s plain language analysis to be unpersuasive. Further, the court’s analysis is unnecessary given 
Wright
’s holding that section 122–1 is to be treated as an ordinary statute of limitations. See slip op. at 32 (McMorrow, J., specially concurring, joined by Freeman, J.)

Despite these views, I concur in today’s opinion for several reasons. First, I believe that today’s result follows from 
Wright
. See slip op. at 33 (McMorrow, J., specially concurring, joined by Freeman, J.). Although I disagreed with the holding in 
Wright
, it is clear to me that this court will not revisit the issue and that 
stare decisis
 applies. In light of the fact that I have registered my disagreement previously, I will recognize this portion of 
Wright
 as the law and follow it, particularly now that the holding in 
Wright
 has been clarified. See 
People v. Barrow
, 195 Ill. 2d 506, 542-43 (2001) (Freeman, J., concurring). Second, and perhaps more importantly, with the rendition of this opinion as well as 
Wright
, I believe that a written record has been laid down by this court and that the matter should now be taken up by the General Assembly.

The questions in this case and in others concerning the procedural aspects of the Act need the attention of our legislature. In my opinion, the fact that the time provision is contained in the very first section of the Act seems to indicate that the legislature deems it to be a threshold inquiry made either before or concurrent with the “frivolous” and “patently without merit” determinations required by section 2.1. As such, I believe that the better course to follow in such cases is to require that the petitioner show the timeliness of his or her post-conviction action. However, this court has held that the time provisions contained in section 122–1 are to be treated as an ordinary statute of limitations, to be raised by the State as an affirmative defense. The court takes this view, it appears, so that meritorious claims will be saved. However, by its very nature, a statute of limitations works to defeat all claims regardless of whether they are meritorious or not. In other words, the meritoriousness of the action is irrelevant. An ordinary statute of limitations is always raised 
prior
 to proceeding on the merits of a cause of action. That is why the party seeking to raise the affirmative matter is charged with the responsibility of pleading it. However, during the summary stage of a post-conviction action, there is no adversary yet in place to raise the matter. Many of the problems our courts have struggled with in these types of cases could be easily resolved by the addition of provisions to the Act which would allow a trial judge to dismiss a petition, without prejudice, for lack of timeliness. In that way, a petitioner would be able to amend the petition to include the necessary allegations concerning the lack of culpable negligence. This is a procedure followed by the federal courts in 
habeas corpus
 actions and bears consideration by our legislature. See, 
e.g.
, 
Kiser v. Johnson
, 163 F.3d 326, 328 (5th Cir. 1999) (and cases cited therein).

As I stated earlier, the court today, consistent with 
Wright
, holds that the matter of timeliness is an affirmative defense that the State must raise or waive. The court defends its statutory interpretation by noting that “[i]f an untimely petition demonstrates that a defendant suffered a deprivation of constitutional magnitude, a dutiful prosecutor may waive that procedural defect during the second stage of the post-conviction proceedings.” Slip op. at 8. I find this language troubling on several levels. My years on this court lead me to conclude that the State tends to raise and litigate all of its defenses when a conviction is challenged, and very rarely, if ever, does it concede a “procedural defect” merely because a petition “demonstrates” a “deprivation of constitutional magnitude.” See, 
e.g.
, 
People v. Collins
, No. 90679 (March 15, 2002). Even putting aside the concerns I have based on my experience, I believe that serious problems can, and most likely will, arise when prosecutors waive timeliness in certain cases but do not do so in others, especially when the claims are similar in nature. Arguments concerning the arbitrariness of State action will loom on the horizon. In pointing this out, I want to alert the General Assembly to some of the legal implications that this court’s interpretation of the statute will have in this context.

Finally, I should also mention the culpable-negligence exception to the time provision. The court today appears to hold as it does because of a fear that claims of actual innocence may go unheard if they are not timely. See slip op. at 8. I must point out that the culpable-negligence exception is not grounded in terms of “actual innocence.” Nor is the exception met due to the meritoriousness of the claims. On the contrary, the inquiry surrounding whether a petitioner’s delay in filing was caused by his or her culpable negligence has nothing to do with the merits of the claims petitioner asserts. Rather, the inquiry is grounded upon whether the petitioner is at fault for not raising the matter within the time period set by the legislature. While some of the circumstances surrounding claims of actual innocence may meet this requirement, some may not. Thus, I believe it unwise for the court to equate, in any manner, the culpable-negligence requirement of section 122–1 with claims of actual innocence. Indeed, the General Assembly may wish to reconsider the phrasing of the safety valve of the Act in order to expressly accommodate claims of actual innocence that arise past the meager time limitations that the Act currently provides.

I am of the view that the General Assembly needs to address some of these problematic issues that have developed since the passage of the amendments decreasing the time available for challenges made pursuant to the Act. The steady flow of cases coming to this court with procedural quirks arising from the amendments leads me to believe that problems will continue to mount in this area. Although I have no doubt in this court’s ability to adapt to many of the circumstances that will arise, I cannot ignore the fact that the Act we are asked to interpret is legislatively created. In light of the important role the Act plays in our criminal justice system, I believe that the General Assembly should consider revisiting the Act in the near future.

JUSTICE McMORROW, also specially concurring:

The majority holds that a post-conviction petition which is untimely filed and which fails to allege facts which show that the delay in filing was not due to the petitioner’s “culpable negligence” (725 ILCS 5/122–1(c) (West 2000)) may not be summarily dismissed by a circuit court during the first stage of post-conviction proceedings under section 122–2.1(a)(2) of the Post-Conviction Hearing Act (725 ILCS 5/122–2.1(a)(2) (West 2000)). I write separately to explain the basis of my agreement with this conclusion. I also write, however, to express my disagreement with the majority’s decision to neither cite to nor to explain the effect of its ruling on this court’s recent decision in 
People v. Collins
, No. 90679 (March 15, 2002).

I

In 
People v. Collins
, No. 90679 (March 15, 2002), this court affirmed the circuit court’s summar
y dismissal of a 
pro se
 defendant’s post-conviction petition because the defendant failed to comply with the affidavit requirement set forth in section 122–2 of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122–2 (West 2000)). That section states, in pertinent part, that “[t]he petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached.” 725 ILCS 5/122–2 (West 2000). The defendant in 
Collins
 had alleged in his post-conviction petition that his court-appointed attorney had failed to comply with his request to file an appeal. The defendant’s petition in 
Collins
 did contain an affidavit which attested to the truthfulness of this claim. However, this court concluded that the defendant’s affidavit served only to verify the allegations in the petition. As such, this court reasoned, the defendant’s affidavit was sufficient to satisfy section 122–1(b) of the Act (725 ILCS 5/122–1(b) (West 2000) (post-conviction petition must be verified by affidavit)), but was insufficient to satisfy the requirements of section 122–2. 
Collins
, slip op. at 6.

To satisfy the affidavit requirement of section 122–2, this court held, the defendant should have attached at least one additional affidavit in support of his post-conviction claim. This second affidavit was necessary, this court reasoned, to show “that the verified allegations are capable of objective or independent corroboration.” 
Collins
, slip op. at 6. Therefore, the additional affidavit needed to come from someone other than the defendant. This court further held that, in the absence of a second affidavit, the defendant was required to “at least explain why such [objective or independent] evidence is unobtainable.” 
Collins
, slip op. at 7. The defendant’s failure to comply with this latter “pleading requirement,” by itself, warranted summary dismissal of his post-conviction petition. 
Collins
, slip op. at 5, 7. This court emphasized in 
Collins
 that it was not deciding whether the defendant’s petition alleged a constitutional deprivation. See 
Collins
, slip op. at 7 (distinguishing 
People v. Edwards
, 197 Ill. 2d 239 (2001)). Rather, the court’s holding rested solely on the affidavit requirement of section 122–2.

II

In the case at bar, this court is asked to decide whether a post-conviction petition which has not been filed within the time limitations set forth in section 122–1 of the Post-Conviction Hearing Act (725 ILCS 5/122–1
 (West 2000))
 and which has failed to allege facts which show that the delay in filing was not due to the petitioner’s “culpable negligence,” may be summarily dismissed as “frivolous or *** patently without merit” under section 122–2.1(a)(2) of the Act (725 ILCS 5/122–2.1(a)(2) (West 2000)). The majority concludes that such a petition may not be summarily dismissed. In so holding, the majority reasons that the circuit court may not consider the timeliness of the post-conviction petition at the summary dismissal stage of the proceedings because the time limitations are neither included nor mentioned in the section of the Act which authorizes summary dismissals. The majority explains:

“Section 122–2.1(a)(2) requires the circuit court to determine within 90 days of the filing of a post-conviction petition whether the petition is ‘frivolous or is patently without merit.’ 725 ILCS 5/122–2.1(a)(2) (West 2000). Importantly, we note that this section is silent regarding timeliness. Rather, timeliness is addressed elsewhere, in section 122–1(c), instructing defendants as to the time periods for filing petitions. If this court can ascertain legislative intent from the plain language of the statute itself, that intent must prevail. 
Barnett v. Zion Park District
, 171 Ill. 2d 378 (1996). We will not depart from the plain language of the statute by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent. 
Barnett
, 171 Ill. 2d at 389.

Under a plain reading of section 122–2.1(a)(2), the circuit court may dismiss a post-conviction petition at the initial stage only if the petition is deemed to be ‘frivolous or patently without merit,’ not if it is untimely filed. If the legislature intended for a trial judge to 
sua sponte
 dismiss a petition as being untimely, it would have so provided in section 122–2.1(a)(2) of the Act. Instead, the legislature provided in section 122–5 that the State may file a motion to dismiss. [Citation.] By addressing timeliness and frivolousness in separate provisions of the Act, the legislature plainly intended to draw a distinction between these two flaws of post-conviction petitions.” Slip op. at 6-7.

After reaching the above conclusions, the majority goes on to determine that the phrase “frivolous or *** patently without merit” refers only to the substance of the claim alleged in the petition, not any procedural requirements or limitations imposed by the Act. The majority notes:

“To accept the argument that the circuit court has the authority to dismiss [an untimely] petition pursuant to section 122–2.1(a)(2) of the Act we would have to hold, contrary to the language of the Act, that the phrase ‘frivolous or *** patently without merit’ encompasses untimely petitions. We will not ignore the Act’s language and adopt this interpretation. If a petition is untimely that does not necessarily mean that the petition lacks merit.” Slip op. at 7.

The majority also explains that it would be improper for a circuit court to consider the timeliness of a post-conviction petition at the summary dismissal stage because such an inquiry might require the court to determine whether the petitioner had alleged facts showing a lack of “culpable negligence” which would excuse the tardy filing. See 725 ILCS 5/122–1(c) (West 2000). Making a determination as to whether a petitioner lacked culpable negligence, the majority observes, would require the circuit court to do more than examine whether the petition alleged a violation of a constitutional right. The majority concludes that this would be improper:

“Moreover, when a circuit court determines whether a defendant is culpably negligent in filing his petition late, the circuit court makes an assessment of the defendant’s credibility. See 
McCain
, 312 Ill. App. 3d at 531. At this initial stage of the proceedings, however,
 the court should only determine whether the petition alleges constitutional deprivations
. The process at the summary review stage measures a petition’s substantive virtue rather than its procedural compliance. See 
Johnson
, 312 Ill. App. 3d at 534. In determining an issue of credibility, the circuit court necessarily exceeds the boundary set by section 122–2.1(a)(1).” (Emphasis added.) Slip op. at 8.

Finally, the majority notes that it is inappropriate as a matter of policy for the circuit court to consider the timeliness of a post-conviction petition at the summary dismissal stage because to do so might result in the loss of a meritorious claim of actual innocence. As the majority explains:

“Claims of actual innocence may be raised in a manner other than in a post-conviction petition, including in a section 2–1401 motion. 735 ILCS 5/2–1401 (West 2000). Nonetheless, to allow the circuit court to dismiss summarily post-conviction petitions for failure to present evidence of actual innocence in a timely manner could lead to a miscarriage of justice. Although our criminal justice system needs finality in criminal litigation and judgments, it should not come at the expense of justice and fairness.” Slip op. at 8.

For the foregoing reasons, the majority concludes that matters of timeliness must “be left for the State to assert during the second stage of the post-conviction proceedings.” Slip op. at 8. During the initial, summary dismissal stage of post-conviction proceedings, the majority holds, a circuit court may not consider whether a post-conviction petition has satisfied the procedural requirement of timeliness.

III

The majority opinion in this case conflicts with 
Collins
 at every significant point in its analysis. For example, this court’s opinion in 
Collins
 states:

“
Contrary to the clear mandate of section 122–2 of the Act
, defendant’s petition was unsupported by ‘affidavits, records, or other evidence’ and offered no explanation for the absence of such documentation. This fact alone justifies the summary dismissal of defendant’s petition.” (Emphasis added.) 
Collins
, slip op. at 5.

The affidavit requirement that this court found dispositive in 
Collins
 was found in section 122–2 of the Act, not section 122–2.1, the section of the Act which authorizes summary dismissal. Pursuant to the majority opinion in the case at bar, a circuit court may 
not
 look to any section of the Act other than section 122–2.1 to determine whether a post-conviction petition is subject to summary dismissal. See slip op. at 6-7.

In addition, the majority opinion in the case at bar holds that the only inquiry the circuit court may make at the summary dismissal stage is whether the post-conviction petition “alleges constitutional deprivations.” Slip op. at 8. In other words, under the majority’s holding, the circuit court is limited at the summary dismissal stage to asking whether the petition states the “ ‘gist of a constitutional claim.’ ” Slip op. at 6, 8, quoting 
People v. Gaultney
, 174 Ill. 2d 410, 418 (1996). According to the majority opinion, matters of “procedural compliance” (slip op. at 8) may 
not
 be considered in the initial stage of post-conviction review.

In contrast, this court in 
Collins
 did not consider whether the defendant’s petition successfully alleged a constitutional deprivation by stating the gist of a constitutional claim. Instead, the court concerned itself solely with whether the defendant complied with the affidavit requirement of section 122–2. In contrast to the case at bar, 
Collins
 holds that the circuit court 
should 
consider whether a 
pro se
 defendant has complied with the Act’s procedural requirements at the initial stage of post-conviction review. 
Collins
 holds that a 
pro se
 defendant’s failure to explain the absence of a second affidavit is sufficient reason, standing alone, to summarily dismiss a post-conviction petition (
Collins
, slip op. at 5, 7), even though the failure to provide that explanation “does not necessarily mean that the petition lacks merit” (
Boclair
, slip op. at 7).

This court’s holding in 
Collins
 also conflicts with the policy concerns expressed by the majority in the instant case. As noted, in 
Collins
, this court held that a 
pro se
 post-conviction petition should be summarily dismissed if it fails to comply with one of the pleading requirements set forth in section 122–2 of the Act. Section 122–2 provides, in full:

“The petition shall identify the proceeding in which the petitioner was convicted, give the date of the rendition of the final judgment complained of, and clearly set forth the respects in which petitioner’s constitutional rights were violated. The petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached. The petition shall identify any previous proceedings that the petitioner may have taken to secure relief from his conviction. Argument and citations and discussion of authorities shall be omitted from the petition.” 725 ILCS 5/122–2 (West 2000).

As this court explained in 
Collins
, the defendant in that case failed to satisfy section 122–2’s requirement that he “at least explain” why a second affidavit was not attached to his petition. 
Collins
, slip op. at 7. Therefore, this court held, his petition was properly dismissed at the summary review stage. 
Collins
, slip op. at 7. Notably, in reaching this conclusion, this court chose not to provide the defendant with the opportunity to amend his post-conviction petition with an explanation for why an additional affidavit was unavailable. Our case law would permit such an amendment. See 
People v. Watson
, 187 Ill. 2d 448 (1999). Nevertheless, this court held that the defendant’s petition should be finally dismissed.

This court’s decision not to permit any amendment of the defendant’s post-conviction petition in 
Collins
 is of considerable importance. Under this holding, it is possible that a 
pro se
 defendant who has a meritorious constitutional claim, including a claim of actual innocence, may never have that claim reviewed by the courts solely because of a technical pleading defect that is easily subject to correction through amendment. This court recognized in 
Collins
 that its holding “will, in some cases, place an unreasonable burden upon post-conviction petitioners.” 
Collins
, slip op. at 7. However, this court concluded that it was constrained by the language of the Act to reach this result. See 
Collins
, slip op. at 7 (“[n]othing in the Act” authorizes the circuit court to depart from section 122–2’s pleading requirements at the summary dismissal stage).

The majority today reaches a contrary result. In the case at bar, the majority holds that it would be a “miscarriage of justice” for a meritorious claim of actual innocence to evade judicial review because of a procedural deficiency in the post-conviction petition. According to the majority, allowing a claim of actual innocence to be lost because of a procedural deficiency would be contrary to principles of “justice and fairness.” Slip op. at 8.

In sum:

• This court in 
Collins
 held that, in determining whether a 
pro se
 post-conviction petition is subject to summary dismissal, the circuit court should look beyond section 122–2.1(a)(2) of the Act and consider whether the petition has complied with the pleading requirements set forth in section 122–2. The majority opinion in the case at bar holds that the circuit court may 
not
 consider sections of the Act other than section 122–2.1(a)(2).

• This court in 
Collins
 upheld the summary dismissal of the defendant’s post-conviction petition without considering whether the defendant’s petition stated the gist of a constitutional claim. The majority opinion in this case holds that the circuit court may dismiss a post-conviction petition at the initial stage of review 
only
 if the petition fails to state the gist of a constitutional claim.

• This court in 
Collins
 held that a technical pleading deficiency in a 
pro se
 post-conviction petition warrants its summary dismissal. The majority opinion in the case at bar holds that, at the summary dismissal stage, the circuit court should not consider whether the petition is in “procedural compliance.” Slip op. at 8.

• This court in 
Collins
 held that the language of the Act requires strict procedural compliance from 
pro se
 post-conviction petitioners at the summary dismissal stage. The majority opinion in the instant case holds that such compliance may not be required at the initial stage of post-conviction review because to do so could result in “a miscarriage of justice.” Slip op. at 8.

This court’s opinion in 
Collins
 and the majority opinion in this case are in direct and irreconcilable conflict. Given this conflict, it appears that the majority opinion in the case at bar, as the later issued of the two opinions, has overruled this court’s decision in 
Collins
 
sub silentio
. The majority’s decision to overrule 
Collins
 is not, of itself error. However, I do believe that the majority has seriously erred by not citing 
Collins 
or explaining the effect that the instant holding has on that decision.
(footnote: 1) As a result of the majority opinion in this case, the bench and bar of this state will be confronted with two opinions from this court, issued within six months of each other, whose holdings and reasoning with respect to the summary dismissal of post-conviction petitions are diametrically opposed. The inevitable result of allowing these two opinions to stand side-by-side will be confusion in our lower courts. Indeed, the present case itself illustrates the problems that are bound to occur. In the case at bar, this court is asked to explain the meaning and scope of our holding in 
People v. Wright
, 189 Ill. 2d 1 (1999). That opinion, as was noted at the time of its issuance, contained conflicting statements regarding the nature of the post-conviction time limitations set forth in section 122–1 of the Act (725 ILCS 5/122–1 (West 2000). See 
Wright
, 189 Ill. 2d at 32-33 (Freeman, C.J., specially concurring, joined by McMorrow, J.). Because of these conflicting statements, as the majority in the case at bar notes, our circuit courts were uncertain how to treat the time limitations and numerous, conflicting appellate court decisions were issued which sought to make sense of 
Wright
. See slip op. at 5. Now, three years later, the majority in the case at bar has cleared up the conflict created by 
Wright
 by expressly overruling that decision in part. See slip op. at 6. Although I welcome the clarity brought by the majority’s decision, the reality is that the confusion and expenditure of judicial resources which followed 
Wright
 could have been easily avoided if this court had simply spoken with a clearer voice. Unfortunately, the same confusion and the same unnecessary expenditure of time and resources to decipher this court’s meaning are certain to take place following the issuance of the majority opinion in the case at bar.

Justice Thomas attempts to reconcile the positions taken by this court in 
Collins
 and the case at bar. See slip op. at 41-43 (Thomas, J., specially concurring, joined by Fitzgerald, J.). Notably absent from Justice Thomas’ analysis, however, is any discussion of the relevant holding of the majority opinion in this case. The principal issue presented in the instant case is whether the circuit court may summarily dismiss a post-conviction petition as frivolous or patently without merit if the petition is untimely filed and if the petition offers no explanation for the tardy filing. Stated otherwise, the question presented is whether an untimely post-conviction petition may be deemed frivolous or patently without merit. The majority opinion answers this question “no.” Why? Because, the majority explains, the definitions of the terms “frivolous” and “patently without merit” do not include any of the Act’s requirements, such as timeliness, which are set forth in sections of the Act outside section 
122–2
.1(a)(2). Instead, according to the majority, a frivolous or meritless petition is defined solely as one which fails to allege a constitutional deprivation. The majority opinion makes this point absolutely clear. The majority states:

“At [the] initial stage of the [post-conviction] proceedings, however,
 the court should only determine whether the petition alleges constitutional deprivations
.” (Emphasis added.) Slip op. at 8.

“Only” means only. Thus, under the majority holding in this case, the circuit courts are instructed that, at the summary dismissal stage, they need not and should not consider whether the post-conviction petition is timely filed. Nor should they consider whether affidavits are attached to the petition. Nor should they consider whether any of the requirements set forth in section 122–1 or section 122–2 have been met. Instead, the circuit courts are instructed that they should only determine whether the petition alleges a constitutional deprivation, that is, whether the petition states the gist of a constitutional claim.

This court’s opinion in 
Collins
, however, stands in stark contrast to the principles regarding summary dismissal adopted by the majority opinion in this case. According to 
Collins
, a frivolous or meritless petition is 
not
 defined solely as one which fails to state the gist of a constitutional claim. Instead, under 
Collins
, a frivolous or meritless petition is also defined as one which fails to meet the pleading requirements set forth in section 122–2, 
e.g.
, the requirement that an affidavit be attached or that an explanation be offered for its absence. Accordingly, under 
Collins
, a post-conviction petition which fails to meet the pleading requirements of section 122–2 may be summarily dismissed even if it states the gist of a constitutional claim. 
Collins
 makes this point absolutely clear. This court’s opinion in 
Collins
 emphasizes that the summary dismissal of the 
pro se
 defendant’s petition was affirmed without our deciding whether the petition stated the gist of a constitutional claim. See 
Collins
, slip op. at 7 (distinguishing 
People v. Edwards
, 197 Ill. 2d 239 (2001)).

According to the case at bar, a frivolous or meritless petition means only 
one
 thing–a petition which fails to state the gist of a constitutional claim. Thus, in this case, any pleading requirements set forth in the Act are not relevant at the summary dismissal stage. 
Collins
, on the other hand, holds that a frivolous or meritless petition means 
more
 than one thing. It also means a petition which fails to meet the pleading requirements of section 122–2. The holdings of the two cases are in direct conflict, notwithstanding Justice Thomas’ protestations that they are not.

Also strikingly absent from Justice Thomas’ analysis is any recognition of the dramatically different policy positions taken in 
Collins
 and the majority opinion in this case. As noted, 
Collins
 takes an extremely strict view of the pleading requirements set forth in section 122–2. The failure to include one of these requirements, 
Collins
 holds, will result in summary dismissal, even of a 
pro se
 petition. Further, no amendment of the 
pro se
 petition will be allowed, even to include the pleading requirement which 
Collins
 holds indispensable. Section 122–2 lists several pleading requirements, one of which is that the petition must “give the date of the rendition of the final judgment complained of.” 725 ILCS 5/122–2 (West 2000). Following the logic of 
Collins
, a 
pro se
 defendant who fails to include the date of his conviction in his post-conviction petition must have that petition summarily and finally dismissed even if the petition contains a meritorious claim of actual innocence. This is an extraordinarily harsh result, but one which 
Collins
 concludes is mandated by the plain language of the Act. See 
Collins
, slip op. at 7 (“[n]othing in the Act” authorizes the circuit court to depart from section 122–2’s pleading requirements at the summary dismissal stage).

The majority opinion in this case, on the other hand, offers a liberal construction of the time limitations set forth in section 122–1. Under the logic of the majority opinion, a post-conviction petition may be filed years beyond the appropriate statutory deadline without any explanation for the delay, yet the circuit court may not raise the issue of timeliness at summary dismissal. Why? In part because, according to the majority, if the circuit court did so, claims of actual innocence might be lost. See slip op. at 8 (allowing a claim of actual innocence to be lost because of a procedural deficiency in the petition would be contrary to principles of “justice and fairness”).

Surely, a post-conviction petition which is filed years too late and which offers no explanation for the delay is as deficient, or more deficient, than one which fails to list the date of conviction or to explain the absence of an affidavit. Why then are these latter deficiencies treated with such draconian fervor in 
Collins
, while the former are liberally excused in the case at bar? Why is the concern that a meritorious claim of actual innocence might escape judicial review a dispositive factor in the majority’s analysis in the case at bar while that same concern appears nowhere in 
Collins
? No explanation has been offered for the extreme disparity in policy concerns and statutory interpretation between the two cases.

Justice Thomas’ special concurrence in this case addresses none of issues noted above. Instead, Justice Thomas focuses solely on the notions of substance and procedure and determines that 
Collins
 and the majority opinion in this case may be reconciled on the basis of these precepts. According to Justice Thomas, the critical portion of the majority opinion in the case at bar is the conclusion that the circuit court may not consider a post-conviction petition’s procedural compliance at summary dismissal but, instead, must consider only its substantive merits. See slip op. at 8 (“The process at the summary review stage measures a petition’s substantive virtue rather than its procedural compliance”). Justice Thomas concludes that the requirements addressed in 
Collins
, 
i.e.
, the obligation to attach an affidavit or explain its absence, are “essential 
substantive
 components of a post-conviction petition.” (Emphasis added.) Slip op. at 41 (Thomas, J., specially concurring, joined by Fitzgerald, J.). Indeed, according to Justice Thomas 
all
 of the requirements contained in section 122–2 are “essential” to a post-conviction petition and are “purely substantive.” Slip op. at 41-42 (Thomas, J., specially concurring joined by Fitzgerald, J.). Thus, Justice Thomas concludes that there is no conflict between 
Collins
 and the case at bar. This is a remarkable conclusion given that 
Collins
 itself holds that one of the requirements at issue in that case, the failure to explain why an affidavit is not attached to the post-conviction petition, is nothing more than a 
nonsubstantive
, 
pleading
 defect:

“[S]ection 122–2 makes clear that the petitioner who is unable to obtain the necessary ‘affidavits, records, or other evidence’ must at least explain why such evidence is unobtainable. In this case, defendant is asking to be excused not only from section 122–2’s 
evidentiary
 requirements but also from section 122–2’s 
pleading
 requirements. Nothing in the Act authorizes such a comprehensive departure.” (Emphases in original.) 
Collins
, slip op. at 7.

According to this court’s opinion in 
Collins
, which was authored by Justice Thomas, the failure to explain why an affidavit is not attached to the petition is a 
pleading
 deficiency. It is 
not
 a substantive defect. In light of the above, how can it possibly be stated that the failure to explain the absence of an affidavit is an “essential substantive component[ ]” of a post-conviction petition, or that section 122–2 is a “purely substantive” provision? Slip op. at 41 (Thomas, J., specially concurring, joined by Fitzgerald, J.).

Furthermore, Justice Thomas’ determination that all of the pleading requirements contained in section 122–2 are substantive components of a post-conviction petition is directly contradicted by the majority opinion in this case. Here, the majority states:

“At this initial stage of the proceedings, however, the court should only determine whether the petition alleges constitutional deprivations. The process at the summary review stage measures a petition’s substantive virtue rather than its procedural compliance.”Slip op. at 8.

Again, according to the majority in this case, at the summary dismissal stage, the circuit court must 
only
 consider whether the petition alleges a constitutional deprivation. No other inquiry is permitted. In the view of the majority, whether the petition alleges a constitutional deprivation is the measure of the petition’s “substantive virtue.” Slip op. at 8. The majority opinion in this case has thus defined the “substance” of a post-conviction petition as that portion of the petition which attempts to allege a constitutional deprivation,
 i.e.
, to state the gist of a constitutional claim.

The affidavit requirement discussed in 
Collins
 is not a “substantive” component of a post-conviction petition under the logic of the majority opinion in the case at bar. Whether a petition contains an explanation for the absence of an affidavit simply has no bearing on the question of whether the allegations of the petition state the gist of a constitutional claim. The two cases cannot, therefore, be reconciled under notions of substance and procedure, and Justice Thomas’ assertion to the contrary is in error.

The only authority which Justice Thomas cites in support of his contention that all of the pleading requirements listed in section 122–2 are “essential substantive components” of a post-conviction petition is 
People v. Jennings
, 411 Ill. 21 (1952). As I noted in my dissent upon denial of rehearing in 
Collins
, 
Jennings
 is inapposite to issues of summary dismissal “because that case predates the addition of section 122–2.1(a)(2) to the Act. The petitioner in 
Jennings
 was represented by counsel and summary dismissal was not a possibility.” 
Collins
, slip op. at 22 (McMorrow, J., dissenting upon denial of rehearing, joined by Freeman, J.). What relevance 
Jennings
 has to deciding whether a post-conviction petition, particularly one filed by a 
pro se
 defendant, should be summarily dismissed has never been explained by any member of this court. Furthermore, Justice Thomas’ reliance on 
Jennings
 is highly selective. 
Jennings
 holds that where the required affidavits are not attached to a post-conviction petition, the circuit court may “grant a further time within which such affidavits may be obtained.” 
Jennings
, 411 Ill. at 26. As noted, this court in 
Collins
 ignored this holding and refused to grant the 
pro se
 defendant any additional time in which to amend his petition. Evidently then, 
Jennings
 is considered binding authority on this court in only certain select respects.

The position taken by Justice Thomas in his special concurrence also leads to questionable results. According to Justice Thomas, all the pleading requirements contained in section 122–2 of the Act, including the affidavit requirements, are “substantive components” of a post-conviction petition. Slip op. at 41 (Thomas, J., specially concurring, joined by Fitzgerald, J.). On the other hand, the time limitations and pleading requirements contained in section 122–1 are procedural. For this reason, Justice Thomas concludes, there is no conflict in holding that the circuit court may not consider whether the petition is timely filed at summary dismissal (a procedural matter) but that it may consider whether the proper affidavits are attached to the petition (a substantive matter). As this court is well aware, section 122–1 of the Act contains a “safety valve,” which states that a defendant’s tardiness in filing a post-conviction petition may be excused if the defendant “alleges facts showing that the delay was not due to his or her culpable negligence.” 725 ILCS 5/122–1 (West 2000). Under the reasoning advanced by Justice Thomas in his special concurrence at bar, a defendant who fails to plead a lack of culpable negligence has committed a “procedural” error, while the defendant who fails to explain the absence of an affidavit has committed a “substantive” error. No explanation has been offered for this highly questionable outcome.

The circuit court judge who is forced to deal with 
Collins
 and the case at bar is presented with a dilemma. Confronted with a post-conviction petition alleging a claim of ineffective assistance of counsel for failing to file an appeal, and without an additional affidavit attached, what should the court do? Should the judge follow 
Collins
’ instructions to summarily dismiss the petition, or should the judge follow the instructions of the majority opinion in this case and “only determine whether the petition alleges constitutional deprivations”? Slip op. at 8. Should the judge invoke this court’s holding in 
Collins
 that the failure to explain the absence of an affidavit is simply a pleading deficiency, or should the judge give effect to the statement of the author of that opinion which has been offered in this case that the failure to explain the absence is an “essential substantive component[ ]” of the petition? Slip op. at 41 (Thomas, J., specially concurring, joined by Fitzgerald, J.). Should the circuit court follow the holding of the majority in this case, since it is the later issued opinion, or should the court follow 
Collins
, since it specifically rules on the affidavit question and the majority today makes no mention of 
Collins
? Surely the circuit court is entitled to guidance from this court and should not have to attempt to reconcile the irreconcilable.

Moreover, what of the consequences after the circuit court rules? Some circuit judges, relying on 
Collins
, will summarily dismiss post-conviction petitions which lack an additional affidavit. On appeal, members of the defense bar will, with justification, point to our holding in this case and argue that the circuit courts should only be addressing whether the petition states the gist of a constitutional claim and should not be considering the affidavit requirement. Some appellate panels will agree with this argument. Others will not. As a result, conflicting opinions will arise and will continue until this court grants leave to appeal in order to resolve the conflict. Time and judicial resources will be expended needlessly. Nothing will be gained.

The majority opinion in the case at bar holds that the process of summary dismissal addresses only 
one
 issue, 
i.e.
, whether the petition states the gist of a constitutional claim. 
Collins
 holds that summary dismissal process addresses 
more
 than one issue, 
i.e.
, whether the petition states the gist of a constitutional claim or whether the petition meets any of the pleading requirements contained in the Act. Whatever one thinks of the merits of these approaches to the process of summary dismissal, it cannot be said that they are compatible or can logically exist at the same time. Either the circuit court’s inquiry at the summary dismissal stage should be limited 
solely
 to whether the petition states the gist of constitutional claim or it should 
not
 be so limited. The court cannot have it both ways.

The petition for rehearing filed by the defendant in 
Collins
 has been pending in this court at the same time this opinion has been under advisement. If the court truly means what it says in the case at bar, and I assume that it does, then in the interests of clarity and guidance, it should have simply granted rehearing in 
Collins
 to conform that opinion with the holding set forth here. See 
Collins
, slip op. at 13 (McMorrow, J., dissenting upon denial of rehearing, joined by Freeman, J.). The court’s failure to do so is both unfortunate in a practical sense for the bench and bar and a poor reflection on the wisdom of this court.

IV

Although I disagree with the majority’s failure to discuss the effect of its decision on 
Collins
, I agree with the conclusion the majority reaches on the merits. Addressing the defendants’ arguments in the instant appeal, the majority first examines this court’s decision in 
People v. Wright
, 189 Ill. 2d 1 (1999). In 
Wright
, this court was asked to decide whether the post-conviction time limitations set forth in section 122–1 of the Act (725 ILCS 5/122–1 (West 2000)) are a jurisdictional prerequisite to maintaining a post-conviction petition and whether a petition’s timeliness was a matter that could be raised for the first time by the State on appeal. A majority of this court answered these questions in the negative. In a separate opinion which I joined, Justice Freeman disagreed with the majority’s treatment of the post-conviction time limitations. Based on the language of the Act, and the importance placed on the time limitations by the legislature, Justice Freeman concluded that time was “ ‘an inherent element of the right’ ” (
Fredman Brothers Furniture Co. v. Department of Revenue
, 109 Ill. 2d 202, 209 (1985), quoting 
Smith v. Toman
, 368 Ill. 414, 420 (1938)) to pursue a post-conviction claim and, hence, a jurisdictional prerequisite to maintaining a post-conviction petition. As such, according to Justice Freeman, the State could raise the issue of timeliness on appeal. Justice Freeman noted that treating the time limitations as jurisdictional did not create any unfairness for the post-conviction petitioner because, under this analysis, the petitioner could excuse the tardiness of the petition by alleging that the delay in filing was not due to his “culpable negligence.” See 725 ILCS 5/122–1(c) (West 2000). As Justice Freeman explained:

“[A] petitioner whose untimely petition is dismissed for lack of jurisdiction could return to the circuit court and attempt to take advantage of the ‘safety valve’ by filing a new petition which contains the requisite allegations concerning the lack of culpable negligence. Such a successive petition would not be barred by the doctrine of 
res judicata
 because a dismissal for lack of jurisdiction does not constitute an adjudication on the merits. Under this approach, the action would proceed in a way that is consistent with the language of the Act (the petitioner must allege and establish his or her lack of culpable negligence for the delay as required under the Act), and the State has not been allowed to ‘trump’ the truly nonculpably negligent petitioner from the opportunity to seek collateral review under the Act.” 
Wright
, 189 Ill. 2d at 30 (Freeman, C.J., specially concurring, joined by McMorrow, J.).

The majority in 
Wright
, however, held that, under the plain language of the Act, time was not an integral part of post-conviction relief and that the time limitations were best viewed as a statute of limitations. 
Wright
, 189 Ill. 2d at 8. The court noted that, like other statues of limitations, the time limitations in the Act were an affirmative defense that were subject to waiver by the State. 
Wright
, 189 Ill. 2d at 10-11. Thus, if the State failed to raise the issue of timeliness in the circuit court, it could not raise the issue for the first time on appeal. 
Wright
, 189 Ill. 2d at 10-11. In sum, the court concluded that the post-conviction time limitations were an ordinary statute of limitations that should not “be treated differently [than] any other.” 
Wright
, 189 Ill. 2d at 12.

After reaching the above conclusions, however, the court in 
Wright
 went on to state that it was “not limiting the trial court’s ability, during the court’s initial review of noncapital petitions [under section 122–2.1(a)(2) of the Act], to dismiss the petition as untimely.” 
Wright
, 189 Ill. 2d at 11. Moreover, 
Wright
 expressly held that the circuit court had a “duty,” imposed upon the court by section 122–2.1(a)(2), to dismiss untimely post-conviction petitions during the first stage of review. 
Wright
, 189 Ill. 2d at 11-12. As was explained at the time 
Wright
 was decided, these latter statements are at odds with the 
Wright
 court’s holding that the post-conviction time limits are an ordinary statute of limitations, since a statute of limitations defense is traditionally treated as an affirmative defense that must be raised in responsive pleadings. See 
Wright
, 189 Ill. 2d at 32-33 (Freeman, C.J., specially concurring, joined by McMorrow, J.).

In the instant case, the majority acknowledges that this court’s opinion in 
Wright
 contains conflicting statements regarding the nature of the post-conviction time limitations and that these statements have generated considerable confusion in our appellate court. See slip op. at 5. The majority today resolves the ambiguity in 
Wright
 by overruling that portion of the 
Wright
 opinion which holds that the circuit court may 
sua sponte
 dismiss an untimely petition. I agree with this result.

As Justice Freeman explained at length in his separate opinion in 
Wright
, the clear and overriding holding of the 
Wright
 majority opinion is that the time limitations in the Act are “an affirmative matter to be raised by the State, 
and the State alone
.” (Emphasis added.) 
Wright
, 189 Ill. 2d at 33 (Freeman, C.J., specially concurring, joined by McMorrow, J.). As Justice Freeman stated, “I read [the majority opinion in 
Wright
] as holding that section 122–1 is to be treated as an ordinary statute of limitation, 
i.e.
, an affirmative defense, and not as a jurisdictional prerequisite. Therefore, in noncapital cases, the untimely petition that lacks culpable negligence allegations [and which is nonfrivolous] must be docketed in order to allow the State to put the culpable negligence matter at issue as an affirmative defense.” 
Wright
, 189 Ill. 2d at 32 (Freeman, C.J., specially concurring, joined by McMorrow, J.).

The 
Wright
 court’s additional statements that the circuit court could raise the issues of timeliness and culpable negligence 
sua sponte
 are irreconcilable with the major holding of that case. See 
Wright
, 189 Ill. 2d at 32-33 (Freeman, C.J., specially concurring, joined by McMorrow, J.) Although I joined Justice Freeman in dissenting from the 
Wright
 court’s principal holding that issues pertaining to timeliness must be raised by the State, I accept the 
Wright
 court’s holding as the law. Accordingly, because the fundamental holding of 
Wright
 is that the issues of timeliness and culpable negligence are an affirmative defense that can be raised 
only
 by the State, and because any rule which allows the circuit court to raise these issues 
sua sponte
 is directly at odds with that holding, I agree that the portion of 
Wright
 which authorizes the circuit courts to 
sua sponte
 dismiss untimely petitions should be overruled. 
Wright
 holds that the post-conviction time limitations are an ordinary statute of limitations that should not “be treated differently [than] any other.” 
Wright
, 189 Ill. 2d at 12. 
Wright
 dictates, therefore, that issues of timeliness may not be raised 
sua sponte
 by the circuit at the summary dismissal stage of post-conviction proceedings.

In addition to the above, I note that by holding that the circuit court should not concern itself with matters of timeliness on first stage review, the majority in the case at bar has removed an issue from the circuit court’s consideration during this stage, thereby reducing the burden placed on the circuit court. In this way, the rule adopted by the majority comports with this court’s understanding that the first stage of post-conviction review, set forth in section 122–2.1(a)(2) of the Act, is intended to be “a simplified procedure” (
People v. Rivera
, 198 Ill. 2d 364, 372 (2001)). For this reason, and for the reasons previously discussed, I concur in the majority’s holding that a circuit court may not 
sua sponte 
raise the timeliness of a post-conviction petition during the first stage of post-conviction review.

JUSTICE FREEMAN joins in this special concurrence.

JUSTICE THOMAS, also specially concurring:

I must briefly respond to Justice McMorrow’s exhaustive examination of the alleged conflict between today’s opinion and this court’s recent decision in 
People v. Collins
, No. 90679 (March 15, 2002). The fact is that no such conflict exists, as, notwithstanding Justice McMorrow’s repeated assertions, section 122–2 is 
not
 a procedural statute. On the contrary, the sole purpose of section 122–2, which is titled “contents of petition,” is to define the essential substantive components of a post-conviction petition:

“The petition shall identify the proceeding in which the petitioner was convicted, give the date of the rendition of the final judgment complained of, and clearly set forth the respects in which petitioner’s constitutional rights were violated. The petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached. The petition shall identify any previous proceedings that the petitioner may have taken to secure relief from his conviction. Argument and citations and discussion of authorities shall be omitted from the petition.” 725 ILCS 5/122–2 (West 2000).

That the foregoing provision is purely substantive not only is plain on its face but also underscored by its relationship to section 122–1, which explains how a proceeding under the Act is commenced:

“The proceeding shall be commenced by filing with the clerk of the court in which the conviction took place a petition (together with a copy thereof) verified by affidavit.” 725 ILCS 5/122–1(b) (West 2000).

Surely, if a proceeding under the Act commences only upon the filing of a “petition,” then the Act must somewhere define what constitutes a “petition.” Otherwise, the filing of any scrap of paper might be deemed to commence a post-conviction proceeding. That definition is found in section 122–2.

And this is where Justice McMorrow’s analysis falters. If a proceeding under the Act may be commenced only upon the filing of a “petition,” and section 122–2 defines “petition,” then it is absurd to suggest that section 122–2 is a mere procedural requirement that the trial court may not consult when assessing whether a petition is frivolous or patently without merit. Indeed, absent compliance with section 122–2’s substantive requirements, no “petition” exists with which to trigger application of the Act.

Significantly, there is nothing new in suggesting that compliance with the Act’s substantive pleading requirements is the necessary first step in any proceeding under the Act. More than 50 years ago, this court explained:

“If the petition [alleges a substantial violation of constitutional rights], the trial court should ascertain whether it is supported by accompanying affidavits and if not, whether the absence of such affidavits is sufficiently explained and excused by the petitioner’s own sworn statements. Where there are no supporting affidavits and their absence is neither explained nor excused, the trial court should either dismiss the petition or grant a further time within which such affidavits may be obtained.

A petition meeting these requirements, both as to substantial allegations of the denial of a constitutional right and as to affidavits, is sufficient to invoke the act.” 
People v. Jennings
, 411 Ill. 21, 26 (1952).

Of course, the converse also is true: a petition that does 
not
 meet these requirements–as to either the necessary allegations or the necessary affidavits–is 
not sufficient
 to invoke the Act.

Thus, contrary to Justice McMorrow’s thesis, there is nothing in the least bit incompatible between today’s decision and 
Collins
. Today, the court correctly holds that, in determining whether a post-conviction petition is frivolous or patently without merit, the trial court may not consider whether the petition suffers from a procedural defect such as untimeliness. In 
Collins
, the court correctly held that, in determining whether a post-conviction petition is frivolous or patently without merit, the trial court 
may
 consider whether the proffered petition is in fact a “petition” as defined by the Act. In effect, then, these decisions are two sides of the same coin, emphatically agreeing that, “[t]he process at the summary review stage measures a petition’s substantive virtue rather than its procedural compliance.” Slip op. at 8.

JUSTICE FITZGERALD joins in this special concurrence.

FOOTNOTES
1:     
1
My criticism is not directed to Justice Kilbride. Because Justice Kilbride dissented in 
Collins
, his positions in 
Collins
 and the case at bar are not inconsistent.