# Illinois Official Reports

## Appellate Court

*Wright v. Board of Trustees, State Universities Retirement System*,
2014 IL App (4th) 130719

| | |
|---|---|
| Appellate Court Caption | CHERYL WRIGHT, Plaintiff-Appellant, v. THE BOARD OF TRUSTEES, STATE UNIVERSITIES RETIREMENT SYSTEM OF ILLINOIS, Defendant-Appellee. |
| District & No. | Fourth District<br>Docket No. 4-13-0719 |
| Rule 23 Order filed<br>Rule 23 Order withdrawn<br>Opinion filed | April 29, 2014<br><br>May 22, 2014<br>May 22, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where the State Universities Retirement System determined that plaintiff received disability benefits from the retirement system and a workers' compensation award for the same disability covering the same period of time, the retirement system was entitled to offset the total amount of the workers' compensation award, regardless of the actual date that the workers' compensation award was paid. |
| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 12-MR-546; the Hon. Thomas J. Difanis, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Gene A. Turk, Jr. (argued), of Law Office of Gene Turk, of Carbondale, for appellant. |
| | |
| | John M. Sturmanis, of Thomas, Mamer & Haughey, LLP, and Michael B. Weinstein (argued), Special Assistant Attorney General, of State Universities Retirement System, both of Champaign, for appellee. |
| | |
| | |
| Panel | JUSTICE POPE delivered the judgment of the court, with opinion. Justices Holder White and Steigmann concurred in the judgment and opinion. |

## OPINION

¶ 1    In July 2007, plaintiff, Cheryl Wright, was awarded disability benefits by the State Universities Retirement System of Illinois (SURS) retroactive to December 23, 2006, based on a July 2006 disability date. In March 2011, SURS staff notified Wright by letter she owed $51,413.62 (after SURS withheld her February 2011 disability payment of $1,687.96) based on a workers' compensation award she received. Wright sought administrative review.

¶ 2    In February 2012, the Claims Panel of SURS issued a written opinion upholding the SURS staff's determination. In June 2012, the Executive Committee of the Board of Trustees of SURS (Executive Committee) issued a final administrative decision adopting the Claims Panel's determination in its entirety. In July 2013, the circuit court affirmed the decision of the Executive Committee.

¶ 3    Wright appeals, asserting her workers' compensation award was not paid until January 11, 2011 (180 days after its July 15, 2010, approval), and, thus, the offset should apply only to SURS benefits received after that date, resulting in a $2,185.25 offset.

¶ 4                                I. BACKGROUND

¶ 5    In January 2007, Wright filed an application for disability benefits with SURS as the result of an on-the-job accident, noting a disability date of July 2006. In July 2007, SURS notified Wright by letter she would begin receiving $1,791.93-per-month disability benefits retroactive to December 23, 2006. The letter contained the following notice:

> "If you qualify for benefits under any State or Federal Workers' Compensation or Occupational Diseases Acts for any period for which disability benefits are payable by SURS, the disability benefit paid by SURS will be reduced by an amount equivalent to such Workers' Compensation or Occupational Diseases payment."

¶ 6    After being advised Wright received a $53,101.58 workers' compensation settlement in case Nos. 07-WC-9038, 07-WC-10331, and 07-WC-10390 (after attorney fees, costs, and

medical expenses had been subtracted), SURS staff sent Wright a letter in March 2011 informing her it was "entitled to offset disability benefits when an employee receives benefits under the State Workers' Compensation or Diseases Act." The letter noted Wright's temporary total disability (TTD) payments ended February 23, 2007. Thus, the SURS offset began February 24, 2007, and continued through her final permanent partial disability (PPD) payment on May 22, 2010, for a total of 168.50 weeks (38.88 months) at $1,365.78 per month, or a total offset of $53,101.58. We note the workers' compensation settlement agreement states the PPD award is equal to 158.50 weeks, apparently a typographical error. SURS withheld Wright's February 2011 disability payment ($1,687.96), leaving a balance of $51,413.62 owed to SURS.

¶ 7        Wright responded to SURS's letter, asserting she was not responsible for the offset amount because her workers' compensation settlement held her harmless for any subrogation. In April 2011, SURS staff responded by letter notifying Wright the subrogation clause in her workers' compensation settlement did not apply to the disability benefits she received from SURS and demanded payment. Wright petitioned for review before the SURS Claims Panel, asserting (1) the State of Illinois agreed to hold her harmless for any claim such as this and (2) her workers' compensation award was limited to PPD and she received nothing for TTD for the time frame alleged by SURS.

¶ 8        In October 2011, a hearing was conducted before the Claims Panel, resulting in a February 2012 written decision. At the hearing, according to the Claims Panel's decision (the record does not contain a transcript of this hearing), counsel for Wright argued (1) the workers' compensation offset should begin in September 2010, when the settlement contract was approved by the workers' compensation arbitrator (the agreement was actually approved on July 15, 2010); or (2) alternatively, the offset should begin 180 days after the settlement was approved because that was when the settlement was actually paid. The Claims Panel noted as follows:

> "It has long been established before the Illinois Workers' Compensation Commission that permanent partial disability benefits begin to accrue immediately after the period of temporary total disability ends. Arbitration and Commission decisions before the Illinois Workers' Compensation Commission have historically ordered that permanent partial disability benefits begin to accrue the day following the point at which the claimant is no longer temporary totally disabled."

The Claims Panel found SURS staff had properly calculated the $53,101.58 offset, noting "it is apparent that the claimant did receive duplicate payments of both SURS disability benefits and Illinois Workers' Compensation permanent partial disability benefits covering the same dates, *i.e.*, February 24, 2007[,] through February 28, 2011." (Wright retired in February 2011 and began receiving retirement benefits, thus terminating her disability payments.) Because SURS did not pay Wright her February 2011 disability benefits, the amount of the offset was reduced to $51,413.62. While the decision incorrectly states Wright's PPD benefits covered through February 28, 2011, in fact, based on SURS staff's calculation, Wright's PPD benefit period ended on May 22, 2010.

¶ 9        In June 2012, the Executive Committee issued a final administrative decision adopting the Claims Panel's determination in its entirety. In July 2012, Wright filed a complaint for administrative review with the circuit court.

¶ 10      In July 2013, following a hearing on the matter, the circuit court affirmed the decision of the Executive Committee.

¶ 11      This appeal followed.

¶ 12      II. ANALYSIS

¶ 13      On appeal, Wright asserts because her workers' compensation award was not paid until January 11, 2011 (180 days after its July 15, 2010, approval), the offset should apply only to SURS benefits received after that date, resulting in a $2,185.25 offset.

¶ 14      A. Standard of Review

¶ 15      The Administrative Review Law (735 ILCS 5/3-101 to 3-113 (West 2010)) applies to all proceedings for judicial review of the final administrative decisions of the Board of Trustees (Board) of SURS. 40 ILCS 5/15-188 (West 2010). We review the administrative agency's decision rather than the judgment of the circuit court. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 531, 870 N.E.2d 273, 292 (2006).

> "The applicable standard of review–which determines the extent of deference afforded to the administrative agency's decision–depends upon whether the question presented is a question of fact, a question of law, or a mixed question of law and fact. [Citations.] Rulings on questions of fact will be reversed only if against the manifest weight of the evidence. [Citation.] In contrast, questions of law are reviewed *de novo* [citation], and a mixed question of law and fact is reviewed under the clearly erroneous standard [citations]." *Id.* at 532, 870 N.E.2d at 292-93.

¶ 16      The parties disagree on the appropriate standard of review in this case. Wright asserts because the question before us involves the interpretation of a statute, *i.e.*, what "payable" means, the *de novo* standard of review applies. SURS contends the primary question is a factual one, *i.e.*, whether the record supports the Executive Committee's application of the offset statute based on the factual determination Wright received workers' compensation benefits during the same period she received SURS disability benefits. Because the resolution of this case turns on the meaning of the term "payable," we review this issue *de novo*.

¶ 17      B. The Offset Period

¶ 18      Section 15-153.1(c) of the Illinois Pension Code provides, in part, as follows:

> "In determining the monthly benefits payable under this Article, a deduction shall be made equivalent to any benefits *payable* to any employee under any State or Federal Worker's Compensation or Occupational Diseases Acts for any period for which disability benefits are *payable*." (Emphases added.) 40 ILCS 5/15-153.1(c) (West 2010).

The workers' compensation settlement provided as follows: "All parties agree that payment of the settlement is deferred until after 180 days from the approval date of this contract." Based on this language, Wright asserts her workers' compensation award did not become *payable* until January 11, 2011 (180 days after the July 15, 2010, approval of the award), and thus, the offset should apply only to SURS disability benefits received after that date. (We note the Claims Panel's decision erroneously states the workers' compensation settlement agreement was

approved by the arbitrator in September 2010; it was actually approved in July 2010.) SURS disagrees, contending the actual date the payment was made is irrelevant.

¶ 19 "The cardinal rule of statutory construction is to ascertain and give effect to the legislature's intent, and the plain language of the statute is the best indication of that intent." *People v. Martin*, 2011 IL 109102, ¶ 21, 955 N.E.2d 1058. "We will not depart from the plain language of the statute by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent." *People v. Boclair*, 202 Ill. 2d 89, 100, 789 N.E.2d 734, 741 (2002).

¶ 20 Wright urges this court to interpret the term "payable" in the offset statute to mean the date the payment is actually received. However, such an interpretation would defeat the purpose of the statute, *i.e.*, to prevent a SURS participant from receiving both SURS disability benefits and a workers' compensation award for dates covering the same period of time. See *Taylor v. State Universities Retirement System*, 203 Ill. App. 3d 513, 522, 560 N.E.2d 893, 899 (1990) ("The purpose of [the offset statute] is to prevent SURS participants from obtaining double recoveries of disability benefits [citation] and to facilitate recoupment of SURS disability benefits to the extent a SURS participant is eligible for workers' compensation or occupational diseases benefits for a period of time for which he or she received SURS benefits."). Further, statutes are to be construed to avoid absurd results. *People v. Hanna*, 207 Ill. 2d 486, 498, 800 N.E.2d 1201, 1207-08 (2003).

¶ 21 In almost any situation this court can envision, disability benefits will be paid long before a workers' compensation award is issued. If this court were to interpret the offset statute as Wright suggests, SURS participants would need only delay actual receipt of any workers' compensation award to avoid reimbursing SURS for any offset. Surely this was not the intent of the legislature. The actual date a workers' compensation award is paid is irrelevant. What is relevant is whether the workers' compensation award is being issued for the same period of time for which the SURS participant also received disability benefits.

¶ 22 In this case, Wright received SURS disability benefits retroactive to December 23, 2006, in the amount of $1,791.93 per month. On February 23, 2007, Wright's TTD benefits expired. Thus, it follows that any permanent partial disability Wright suffered was present the day after she was no longer temporarily totally disabled–either she was permanently partially disabled or she was not. The fact a PPD determination was not made until later is irrelevant. Based on the workers' compensation settlement agreement, Wright agreed to a lump-sum settlement of $53,101.58 (after attorney fees, costs, and medical expenses had been subtracted), representing 22.5% of each leg (48.375 weeks for each leg) and 17.5% for each hand (35.875 weeks per hand) for a total of 168.50 weeks. It is of no consequence the workers' compensation settlement agreement was not approved by the arbitrator until July 15, 2010, or paid to Wright until January 11, 2011.

¶ 23 Wright cites *National Manufacturing v. Industrial Comm'n*, 331 Ill. App. 3d 1045, 1048, 780 N.E.2d 703, 706 (2002), for the proposition PPD benefits do not accrue unless and until an arbitrator has entered an award. However, the issue in *National Manufacturing* was whether a penalty imposed under section 19(k) of the Workers' Compensation Act (820 ILCS 305/19(k) (West 1994)) against an employer for unreasonably withholding payment of TTD benefits should also apply to the PPD award–which was not entered until the time the penalty was imposed–as " 'the amount payable at the time of the award.' " *National Manufacturing*, 311 Ill. App. 3d at 1047, 780 N.E.2d at 705. The court found the penalty should not have included

PPD benefits because they had not "accrued" at the time of the penalty hearing. *Id*. at 1048, 780 N.E.2d at 706. The *National Manufacturing* court used the term "accrue" to denote the payments that had been unreasonably withheld by the employer, which logically could not include the recently awarded PPD benefit. Here, however, we are not concerned with whether a penalty should be imposed on an employer for failing to pay a recently awarded PPD benefit. Rather, the issue before us is whether a SURS participant is required to reimburse SURS for benefits she received for the same period of time her workers' compensation award was also payable.

¶ 24       In this case, SURS determined Wright received both disability benefits from SURS and a workers' compensation award covering the same period of time. Because Wright does not take issue with the formula SURS used to calculate the offset amount, and because we hold the actual date the workers' compensation award was paid is irrelevant, SURS is entitled to an offset amount of $53,101.58. Because SURS already withheld $1,687.96, Wright must reimburse SURS $51,413.62.

¶ 25                                    III. CONCLUSION
¶ 26       For the reasons stated, we affirm the Executive Committee's decision.

¶ 27       Affirmed.