2021 IL App (1st) 182548-U

No. 1-18-2548

Order filed June 17, 2021

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Cook County, Illinois |
| Plaintiff-Appellee, | ) ) | |
| vs. | ) ) | No. 09 CR 15920 |
| SHALIMAR SANTIAGO, | ) ) | Honorable Ursula Walowski, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Justices Lampkin and Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court's second-stage dismissal of defendant's postconviction petition is affirmed where defendant failed to show that he was not culpably negligent for filing his postconviction petition beyond the statutory limitation period.

¶ 2    Defendant, Shalimar Santiago, appeals the second-stage dismissal of his petition filed pursuant to the Postconviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2014)). On appeal, Santiago contends the circuit court erred in dismissing his petition where he made a substantial showing that: (1) his constitutional right to effective assistance of counsel was violated where his trial counsel (a) advised him not to testify and (b) failed to present evidence that the

sport-utility vehicle (SUV) was prone to roll over; (2) his constitutional right to effective assistance of counsel was violated where his appellate counsel failed to raise the trial court's non-compliance with Rule 431(b) on direct appeal; and (3) he was not culpably negligent for his untimely filing where the delay was *de minimis* and he provided sufficient facts to show that he was not negligent.

¶ 3        For the following reasons, we affirm the circuit court's second-stage dismissal of defendant's postconviction petition.[1]

¶ 4                                    I. BACKGROUND

¶ 5        We discuss only the facts necessary for our disposition of the issues in this appeal. For a more thorough discussion of the facts, see Santiago's direct appeal. *People v. Santiago*, 2014 IL App (1st) 121077-U.

¶ 6        In the early morning hours of August 1, 2009, Santiago repeatedly drove Yossiris Soto's minivan into the back of an SUV, causing the SUV to roll over. One of the SUV's eight occupants—Stephanie Herrera—died, and the remaining seven occupants survived—Khanh Tran, Robert Thompson, Joseph Penkala, Cristina Monarrez, Joseph Aroni, Michael Vollman, and Belinda Garcia. Following a jury trial, Santiago was convicted of one count of first-degree murder and seven counts of aggravated battery.

¶ 7        On July 31, 2009, Penkala borrowed his roommate's black SUV so he could drive to a Chicago nightclub with friends. In the early morning hours of August 1, 2009—after visiting a second nightclub with Aroni, Thompson, Tran, Garcia, Herrera, Monarrez, and Vollman—Penkala began driving them back to the western suburbs. After exiting the freeway so Garcia could use the restroom, Penkala got lost attempting to locate a freeway entrance. While the SUV was waiting at a red light, a minivan slowly drove by, headed in the opposite direction.

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 8        The minivan driver, who was later identified as Santiago, made some sort of sign with his hands and, moments later, struck the rear of the SUV. Penkala ran the red light, attempting to flee from the minivan; however, Santiago continued to follow, sideswiping the SUV. When Penkala attempted to make a left turn, the minivan struck the SUV once again, causing the latter to roll over two or three times before landing upside down. The occupants suffered injuries including, *inter alia*, broken bones, a coma (Penkala), and death (Herrera). Michael Timothy, a battalion chief with the Chicago Fire Department, witnessed the collision and performed triage on the occupants of the SUV.

¶ 9        Soto, the owner of the minivan, was in the minivan's front passenger seat that night, but testified she could only recall parts of the evening as she was intoxicated. However, in a handwritten statement she gave to police, she recalled driving to BeeFee's restaurant with Santiago, a Latin King. She observed a Latino male pumping the brakes of a black SUV and Santiago said, "those are them dragons," referencing a rival gang. Later, at 2 or 3 a.m., she observed a second black SUV stopped at a red light, and Santiago stated, "they are trying to kill us." Santiago then drove through the red light, hit the SUV at 50 or 60 miles per hour, and subsequently hit the SUV a second time, causing it to roll over. Soto and Santiago fled the minivan on foot and Soto later called 911 to falsely report her minivan had been stolen. Soto testified at trial that she was willing to lie in her written statement and that one day prior to the offense she, Santiago, and a man named "Macho" were driving in her minivan when someone shot into her van, striking Macho.

¶ 10       Christine Lorna, a Chicago firefighter, testified that she detected the odor of alcohol on Penkala's breath while she tended to his injuries at the scene. The parties stipulated Penkala had tested positive for opiates following the incident.

¶ 11        Officer Steven Marchfield testified that, after examining the crash site, he concluded the SUV's wheels and tires were not "stock." Instead, they were extremely wide wheels with narrow tires.

¶ 12        Defense counsel requested a reckless homicide instruction during the jury instruction conference. The State rebutted counsel's argument that Santiago had merely bumped into the SUV and responded that Santiago had acted intentionally—repeatedly hitting the SUV at high rates of speed. The trial court denied Santiago's motion.

¶ 13        The jury found Santiago guilty of one count of first-degree murder and seven counts of aggravated battery. The trial court subsequently sentenced Santiago to a term of 49 years' imprisonment, to run consecutively to seven concurrent five-year terms of imprisonment.

¶ 14        On direct appeal, Santiago argued that (1) the trial court should have instructed the jury regarding the lesser-included offense of reckless homicide; (2) the State misrepresented evidence during closing argument; and (3) his sentence is excessive. We rejected Santiago's contentions and affirmed the trial court's judgment on February 13, 2014. *People v. Santiago*, 2014 IL App (1st) 121077-U. Santiago petitioned for leave to appeal our decision but was denied by the Illinois Supreme Court on May 28, 2014. *People v. Santiago*, 380 Ill. Dec. 510.

¶ 15        Thereafter, on July 16, 2015, Santiago filed an "Inquiry/Request to Clerk of Circuit Court for Status Report, or Copy of Circuit Court's Judgment Order Entered on 1st Stage of Petition for Postconviction Relief." In his filing, Santiago averred that he filed an initial postconviction petition on March 23, 2015, and had not received notification of whether his petition was dismissed or advanced to the second stage.

¶ 16        While the circuit court docketed Santiago's petition and appointed postconviction counsel on November 5, 2015, Santiago did not file his initial *pro se* postconviction petition with the court until January 7, 2016.

¶ 17        Santiago, through appointed counsel, filed a supplemental petition for postconviction relief on September 19, 2017. Santiago claimed: (1) ineffective assistance of appellate counsel for failing to challenge (a) the trial court's non-compliance with Illinois Supreme Court Rule 431(b), and (b) the State's prejudicial, irrelevant testimony; and (2) ineffective assistance of trial counsel for (a) failing to seek a second-degree murder instruction, (b) advising Santiago not to testify, and (c) failing to present additional evidence to support a reckless homicide jury instruction or negate the mental state for first-degree murder.

¶ 18        On January 9, 2018, the State filed a motion to dismiss Santiago's postconviction petition. In its motion, the State argued that Santiago's petition was untimely filed and that the untimeliness was due to his culpable negligence. Additionally, the State argued that several of Santiago's claims were barred by *res judicata* and forfeiture. The State further argued Santiago failed to meet the requirements under *Strickland v. Washington*, 466 U.S. 688, 694 (1984), to show ineffective assistance of trial and appellate counsel.

¶ 19        Subsequently, on June 21, 2018, Santiago filed, through appointed counsel, a reply to the State's motion. Within his reply, Santiago offered an explanation for the delay in filing his initial *pro se* petition. Santiago alleged he is learning disabled in reading comprehension and needed the assistance of another inmate to prepare his postconviction petition. He further claimed that he began working on his petition, through another inmate, in February of 2015, after unsuccessfully attempting to draft the petition on his own. Additionally, Santiago avers he could not go to the law

library for assistance as he was in protective custody at Menard beginning in 2013. According to Santiago, this meant he had someone come to his cell once a week to provide law library services.

¶ 20 On August 2, 2018, the circuit court heard arguments on the State's motion to dismiss Santiago's petition. The circuit court issued a written order on October 29, 2018, granting the State's motion to dismiss Santiago's petition, finding that the petition was untimely, and the claims were otherwise frivolous and patently without merit. On November 7, 2018, following denial of his motion to reconsider, Santiago filed a timely notice of appeal.

¶ 21                                     II. ANALYSIS

¶ 22 On appeal, Santiago contends the circuit court erred in dismissing his petition where he made a substantial showing that: (1) his constitutional right to effective assistance of counsel was violated where his trial counsel (a) advised him not to testify and (b) failed to present evidence that the SUV was prone to roll over; (2) his constitutional right to effective assistance of counsel was violated where his appellate counsel failed to raise the trial court's non-compliance with Rule 431(b) on direct appeal; and (3) he was not culpably negligent for his untimely filing where the delay was *de minimis* and he provided sufficient facts to show that he was not negligent.

¶ 23 The Act (725 ILCS 5/122-1 *et seq.* (West 2014)) enables a criminal defendant to challenge their conviction based on alleged constitutional violations that occurred during their trial or at sentencing. *People v. Dupree*, 2018 IL 122307, ¶ 28. Proceedings under the Act are divided into three stages of review. *People v. Domagala*, 2013 IL 113688, ¶ 32. At the first stage, a petitioner need only assert enough facts to set forth the gist of a constitutional claim. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). If the circuit court—after a threshold evaluation of the allegations—finds that the petition has made an arguable constitutional claim, the petition then advances to the second stage and petitioner may be appointed counsel. *People v. Tate*, 2012 IL 112214, ¶ 10.

¶ 24     At the second stage, the State enters the proceedings and shall file an answer or motion to dismiss the petition. 725 ILCS 5/122-5 (West 2014). "During the second stage, the petitioner bears the burden of making a substantial showing of a constitutional violation." *Domagala*, 2013 IL 113688, ¶ 35. A substantial showing means the allegations, if proven at an evidentiary hearing, would entitle the petitioner to relief. *Id*. The court does not resolve evidentiary questions, nor does it engage in any fact-finding or credibility determinations. *Id*. Instead, all well-pled factual allegations are taken as true unless positively rebutted by the trial record. *Id*. A petition is advanced to the third stage—an evidentiary hearing—only when the allegations supported by "affidavits, records, or other evidence" (725 ILCS 5/122-2 (West 2014)) make a substantial showing of a constitutional deprivation. *Dupree*, ¶ 28. We review the second-stage dismissal of a postconviction petition *de novo*. *Id*; see also *People v. Parada*, 2020 IL App (1st) 161987, ¶ 18 (*de novo* review means we analyze the petition's claims the same as a trial court would).

¶ 25     We first address the timeliness of Santiago's petition. Under the Act, proceedings must be commenced within:

> "6 months after the conclusion of proceedings in the United States Supreme Court * * * If a petition for certiorari is not filed, no proceedings under this Article shall be commenced more than 6 months from the date for filing a certiorari petition, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence." 725 ILCS 5/122-1(c) (West 2014).

It is undisputed that Santiago's petition was not filed within the statutory limitation period set forth above. The Illinois Supreme Court denied Santiago leave to appeal on May 28, 2014. *People v. Santiago*, 380 Ill. Dec. 510. Pursuant to U.S. Supreme Court Rule 13, a petition to review a

judgment entered by a state court of last resort is timely when filed within 90 days after its entry. See U.S. Sup. Ct. R. 13(1) (eff. July 1, 2013). Santiago therefore had until August 26, 2014—90 days from May 28, 2014—to petition for review by the United States Supreme Court. Thereafter, Santiago had six months to timely file under the Act—until February 26, 2015.

¶ 26    Santiago did not file his petition before February 26, 2015; rather, his initial *pro se* postconviction petition was first filed with the Clerk's office on January 7, 2016. Nonetheless, the circuit court docketed the petition and advanced it to the second stage on November 5, 2015.[2] On July 16, 2015, Santiago filed an "Inquiry/Request to Clerk of Circuit Court for Status Report, or Copy of Circuit Court's Judgment Order Entered on 1st Stage of Petition for Postconviction Relief." Within his inquiry, Santiago averred that he had filed an initial *pro se* postconviction petition on March 23, 2015. Additionally, attached to his inquiry, Santiago provided a "Proof/Affidavit of Service" which is dated and notarized on March 23, 2015. Within this affidavit, Santiago attests that, on March 11, 2015, he placed two copies of his postconviction petition in the bars of his cell to be mailed to the Clerk's office. On appeal, Santiago clarifies that his petition was completed on March 11, 2015, when it was sent to be notarized in the law library. It was not returned to him until March 23, 2015, after which he sent out his petition for mailing. As March 23, 2015 is nearly a month later than the date Santiago's petition was due—February 26, 2015— it is indisputable that his petition was untimely.

¶ 27    We must next ascertain if Santiago's late filing is excused, that is, whether the delay was not due to Santiago's culpable negligence. Unless the petitioner alleges facts which show that the delay was not caused by their culpable negligence, the court shall, upon the State's motion, dismiss the petition as untimely. See 725 ILCS 5/122-1(c) (West 2014). "Culpable negligence has been

_____

[2] The record indicates the circuit court did not have a copy of Santiago's postconviction petition when it was docketed and advanced on this date.

defined as '[n]egligent conduct that, while not intentional, involves a disregard of the consequences likely to result from one's actions.' " *People v. Boclair*, 202 Ill. 2d 89, 106 (2002) (quoting Black's Law Dictionary 1056 (7th ed. 1999)). Culpable negligence requires something more than ordinary negligence and "is akin to recklessness." *Id*. at 108. As it is a defendant's obligation to know the time requirement under the Act, an "unfamiliarity with those requirements does not demonstrate a lack of culpable negligence." *People v. Johnson*, 2015 IL App (2d) 131029, ¶ 27. A trial court's decision regarding a defendant's culpable negligence is reviewed using a two-tiered standard of review. The trial court's fact findings regarding whether there was culpable negligence receive deference and will be reversed only if manifestly erroneous, but the reviewing court considers *de novo* whether the established facts demonstrate culpable negligence. *People v. Ramirez*, 361 Ill. App. 3d 450, 452 (2005). Where, as here, the trial court made no findings of facts regarding a defendant's culpable negligence, we review the issue *de novo*. *Id*.

¶ 28        Santiago, in his reply brief, argued that his delay in filing his initial *pro se* petition was not due to his culpable negligence. Specifically, Santiago alleged he is learning disabled in reading comprehension and needed the assistance of another inmate to prepare his postconviction petition. He further claimed that he began working on his petition, through another inmate, in February of 2015, after unsuccessfully attempting to draft the petition on his own. Additionally, Santiago averred he could not go to the law library for assistance because he was in protective custody at Menard beginning in 2013. According to Santiago, this meant he had someone come to his cell once a week to provide law library services. Even accepting Santiago's averments as true, as we must at this stage (*Domagala*, 2013 IL 113688, ¶ 35), we cannot find that Santiago was not culpably negligent for filing his postconviction petition beyond the limitations period detailed in the Act. See 725 ILCS 5/122-1(c) (West 2014).

¶ 29        Santiago asserts he was in protective custody from 2013 through February of 2015, when his petition was due. However, Santiago had—by his own admission—weekly service from the law library for the over two years he was in protective custody. Additionally, it is worth noting that Santiago does not assert that he was in protective custody through no fault of his own. Furthermore, despite Santiago's assertions that he is learning disabled and has had a low reading level throughout his life, he waited until the month his petition was due to seek the help of another inmate in preparing his postconviction petition. We find Santiago was aware of the potential difficulties he faced in preparing a petition and nonetheless failed to seek timely help. Furthermore, Santiago had sufficient access to law resources to prepare a postconviction petition in a timely matter. Accordingly, Santiago has failed to establish that the late filing was not due to his culpable negligence.

¶ 30        Santiago relies on this court's decisions in *People v. Upshaw*, 2017 IL App (1st) 151405, and *People v. Wilburn*, 338 Ill. App. 3d 1075 (2003) in arguing that the facts shown here demonstrate that his delay was not due to his culpable negligence. In *Upshaw*, we found Upshaw was not culpably negligent where his eight-month delay in filing his postconviction petition was due to (1) his severely limited access to the law library due to repeated lockdowns at Stateville, where he was incarcerated, which were caused through no fault of Upshaw, and (2) the fact that his trial transcripts and legal materials were lost by prison employees. 2017 IL App (1st) 151405, ¶ 23-27. While Santiago undoubtedly had diminished access to the law library, his access to legal resources—by his own assertion—was not severely limited due to his protective custody. Furthermore, Santiago makes a brief assertion that he spent "a period in segregation" when he was separated from his papers and property, but he does not explain why or how long he was separated from them. Instead, Santiago focuses on his inability to complete his petition on his own and points

out that he requested help drafting his petition in February of 2015, the month the petition was due. In *Wilburn*, we found Wilburn was not culpably negligent where his 43-month delay in filing his petition was because his substantive claim was established by a later Illinois Supreme Court decision. 338 Ill. App. 3d 1075. The instant case is factually inapposite, where Santiago's claims are based on arguments he made, or could have made, at the trial level or on direct appeal.

¶ 31     For these reasons, we find Santiago's petition was properly dismissed where Santiago failed to show that he was not culpably negligent for filing his postconviction petition beyond the statutory limitation period. Since we hold that Santiago's petition was properly dismissed as untimely, we do not reach his remaining contentions on appeal.

¶ 32                                III. CONCLUSION

¶ 33     Based on the foregoing, we affirm the circuit court's judgment dismissing Santiago's second stage postconviction petition.

¶ 34     Affirmed.