2022 IL App (1st) 201058-U

No. 1-20-1058

Order filed July 5, 2022

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 CR 17119 |
| | ) | |
| PARIS TAYLOR, | ) | Honorable |
| | ) | Charles P. Burns, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice Hyman and Justice Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*: The summary dismissal of defendant's *pro se* postconviction petition is affirmed when (1) his claim could have been raised on direct appeal, (2) he failed to meet the requirements of section 122-2 of the Post-Conviction Hearing Act (725 ILCS 5/122-2 (West 2018)), and (3) his ineffective assistance claim is speculative.

¶ 2    Defendant Paris Taylor appeals from the circuit court's summary dismissal of his *pro se* petition for relief filed pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2018)). On appeal, defendant contends that the circuit court erroneously dismissed the

petition, which stated an arguable claim of ineffective assistance of trial counsel for failure to investigate prior to stipulating to the victim's phone number. We affirm.

¶ 3        Following a bench trial, defendant was found guilty of three counts of aggravated criminal sexual assault (720 ILCS 5/11-1.30(a)(4) (West 2012)) and two counts of aggravated kidnapping (720 ILCS 5/10-2(a)(3) (West 2012)). The trial court merged the aggravated kidnapping counts, and sentenced defendant to natural life imprisonment without parole for three counts of aggravated criminal sexual assault and one count of aggravated kidnapping. The facts were detailed in our order on direct appeal. See *People v. Taylor*, 2018 IL App (1st) 152072-U. We therefore relate only the facts relevant to the instant appeal.

¶ 4        At trial, S.T. testified that around 3 a.m. on August 19, 2012, she was outside, talking on the phone, when defendant approached and pointed a firearm at her. Defendant, who was wearing a mask, told her to hang up and come with him. S.T. complied because defendant had a firearm. At one point, defendant removed his mask and put it on S.T. However, S.T. could still see light through the material.

¶ 5        Defendant and S.T. entered a dark-colored SUV, and he drove to another location. There, they exited the SUV and entered a backyard. Defendant took S.T. to an attic-like room inside a house and told her to remove her shorts. He removed her underwear and told her to lie on a bed. Defendant touched her breasts and torso, placed his mouth on her vagina, and inserted his penis into her vagina. At one point, defendant turned on a lamp and S.T. saw his face. After ejaculating on her stomach, defendant "wipe[d]" S.T. with a substance that smelled like hand sanitizer, returned her clothing, and drove her to an area near her home. Although defendant told S.T. not to

say "anything," she called 911. She identified defendant in a photographic array, directed an officer along the route defendant drove, and identified defendant in a line-up at a police station.

¶ 6    Defendant testified that he first met S.T. at a gas station when he lent her money and was "involved" with her at least three times. At one point, defendant's girlfriend, Dawn Sutton, found S.T.'s number in his phone and called her; S.T. told Sutton that she and defendant were friends, and that she had a girlfriend. On August 19, 2012, defendant went to the gas station and encountered S.T., who asked for money he had promised her. S.T. then accompanied defendant home and they engaged in consensual sexual activity. As they prepared to leave, defendant gave her $50. However, S.T. complained that defendant promised her $100.  Defendant later discovered that S.T. took two credit cards from his wallet. He located S.T., and took the credit cards and money.

¶ 7    During cross-examination, defendant testified that he met S.T. at the end of July or beginning of August 2012, and that she took his number and "kept" calling him. S.T. asked defendant for money because she was pregnant. Defendant had sex with S.T. three times, and paid her "probably twice."  He could not call S.T. or go to her home because she had a girlfriend.

¶ 8    In rebuttal, S.T. denied knowing defendant or meeting him at the gas station.

¶ 9    The trial was continued, and at a subsequent proceeding, the State filed a motion to strike defendant's testimony because the defense failed to provide notice it intended to disclose evidence of prior sexual contact between defendant and S.T. as required by section 115-7(b) of the Code of Criminal Procedure (725 ILCS 5/115-7(b) (West 2012)). The State explained that it issued subpoenas for defendant's and S.T.'s phone records in order to investigate defendant's testimony that he and S.T. had a prior relationship and tendered copies of the records to trial counsel. The

State asked the court to strike the testimony or permit the State to present witnesses to lay the foundation for the cell phone records.

¶ 10    After argument, the court found that the defense violated the statute and that defendant's answer to discovery did not raise a defense of consent. Therefore, the court would strike the complained-of testimony or permit evidence to rebut it. The State informed the court that there would be a two-week delay to obtain a witness from the cell phone company, but that the State would enter a stipulation if the defense agreed. The case was then passed.

¶ 11    When court reconvened, the State entered a stipulation that S.T. would testify that in August 2012, her only cell phone number was xxx-xxx-7376, and the bill was paid by her mother Laticia Wilson. The recordkeeper for Sprint would testify that the records for cell phone number xxx-xxx-7376, from August 1, 2012, to August 20, 2012, did not contain defendant's cell phone number, Sutton's cell phone number, or Sutton's landline. The recordkeeper would further testify that on August 19, 2012, cell phone number xxx-xxx-7376 received an incoming call at 3:16 a.m., which lasted 22 minutes; the incoming call was not from defendant's or Sutton's phone numbers. The next call was to 911 at 5:08 a.m.

¶ 12    In finding defendant guilty of three counts of aggravated criminal sexual assault and two counts of aggravated kidnapping, the court found S.T. credible and rejected defendant's consent defense, finding defendant's testimony to be "totally incredible" and "frankly insulting" to the court. However, the court found that the State did not prove beyond a reasonable doubt that defendant was armed with a handgun and acquitted him of other charges involving "a dangerous weapon or a deadly weapon."

¶ 13    Posttrial, defendant filed a *pro se* motion pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), alleging ineffective assistance when, relevant here, trial counsel failed to inform the court that the person who testified at trial was "not the true victim." Defendant further alleged that trial counsel did not obtain defendant's and Sutton's phone records, or subpoena the person to whom S.T. was speaking when the incident began.

¶ 14    At a hearing on the motion, defendant told the court that he told trial counsel that the person testifying was "not the girl." When questioned by the court, trial counsel acknowledged defendant's statement, but asserted that the police reports had S.T.'s name and picture. Defendant also argued that trial counsel was ineffective for failing to subpoena defendant's and Sutton's phone records. The trial court asked the State whether the records existed, and the State replied that Sutton's phone records were subpoenaed and provided to the defense, as were defendant's and S.T.'s phone records, which showed no calls between defendant's and S.T.'s phone numbers. The trial court denied the *Krankel* motion.

¶ 15    After argument, the court merged the two counts of aggravated kidnapping and sentenced defendant to natural life imprisonment without parole for three counts of aggravated criminal sexual assault and one count of aggravated kidnapping.

¶ 16    On direct appeal, we affirmed defendant's convictions over his contention that the State failed to prove that he used or threatened force during the offenses. See *Taylor*, 2018 IL App (1st) 152072-U.

¶ 17    On December 2, 2019, defendant filed a *pro se* postconviction petition alleging ineffective assistance when, relevant here, trial counsel failed to object to the "forced stipulation" of cell phone

records. The petition asserted that Wilson, who was 11 years older than S.T., was not her mother and that S.T. had "access" to multiple cell phones.

¶ 18    Defendant attached, relevant here, a cell phone call log and "Comprehensive Background Checks" for S.T and Leticia Sunshine Wilson. The cell phone call log for phone number xxx-xxx-7376 bore a Sprint logo, listed calls between August 19, 2012, and August 20, 2012, and identified Wilson as the "Customer." The "Comprehensive Background Check" for S.T. listed four aliases, a birthdate of April 8, 1991, a "Current Phone," and "More Phones" consisting of three landline numbers and three cell phone numbers, including xxx-xxx-7376. The "Comprehensive Background Check" for Wilson listed 11 aliases, a birthdate of September 28, 1980, a current landline, and five other phone numbers. The "Comprehensive Background Checks" are undated and do not identify the person, website, or company that prepared them or when the phone numbers were in use.

¶ 19    On January 21, 2020, the circuit court summarily dismissed the petition as frivolous and patently without merit in a written order finding, relevant here, that even if S.T. had another cell phone, that information would not have affected the outcome of defendant's trial. The court further found that defendant's documentary evidence, "an online comprehensive background check from an undetermined website," was "not credible."

¶ 20    On August 18, 2020, defendant placed his *pro se* motion for leave to file a late notice of appeal in the prison mail. On October 8, 2020, this court granted defendant leave to file a late notice of appeal.

¶ 21    On appeal, defendant contends that the circuit court erroneously dismissed the petition because it stated an arguable claim of ineffective assistance of counsel for failing to investigate

before stipulating to S.T.'s cell phone number, which prejudiced defendant because evidence that S.T. had other phone numbers would have supported defendant's consent theory. He concludes that a "proper investigation" could have led to other phone numbers and "substantiated" his testimony that he and S.T. knew each other and were in contact by phone.

¶ 22    The Act provides a three-stage procedural mechanism through which a defendant may assert a substantial denial of his constitutional rights in the proceedings which resulted in his conviction. *People v. Boclair*, 202 Ill. 2d 89, 99 (2002). "The purpose of [a postconviction] proceeding is to allow inquiry into constitutional issues relating to the conviction or sentence that were not, and could not have been, determined on direct appeal." *People v. Barrow*, 195 Ill. 2d 506, 519 (2001). Thus, issues that could have been presented on direct appeal, but were not, are forfeited. *People v. Blair*, 215 Ill. 2d 427, 443-47 (2005).

¶ 23    At the first stage, the defendant files a petition, which the circuit court independently reviews and, taking the allegations as true, determines whether it is frivolous or is patently without merit. *People v. Tate*, 2012 IL 112214, ¶¶ 8-9. A petition should be summarily dismissed as frivolous or patently without merit only when it has no arguable basis in either fact or law. *People v. Hodges*, 234 Ill. 2d 1, 11-12 (2009). A petition lacks an arguable basis in fact or law when it "is based on an indisputably meritless legal theory or a fanciful factual allegation." *Id.* at 16. Fanciful factual allegations are those which are "fantastic or delusional," and an indisputably meritless legal theory is one that is "completely contradicted by the record." *Id.* at 16-17. We review the summary dismissal of a postconviction petition *de novo*. *Id.* at 9.

¶ 24    To determine whether trial counsel was ineffective, we follow the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Hodges*, 234 Ill. 2d at 17. At the first stage of

postconviction proceedings, "a petition alleging ineffective assistance may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *Id.*

¶ 25 Because most postconviction petitions are drafted by *pro se* defendants, "the threshold for a petition to survive the first stage of review is low." *People v. Allen*, 2015 IL 113135, ¶ 24. This low threshold, however, "does not excuse the *pro se* [defendant] from providing factual support for his claims; he must supply sufficient factual basis to show the allegations in the petition are 'capable of objective or independent corroboration.' " *Id.* (quoting *People v. Collins*, 202 Ill. 2d 59, 67 (2002)).

¶ 26 Initially, we note that defendant's ineffective assistance of counsel claim could have been raised on direct appeal, and is therefore forfeited. The record reveals that after defendant testified that S.T. phoned him repeatedly, and that Sutton phoned S.T. after discovering S.T.'s number in defendant's phone, S.T. testified in rebuttal that she did not know defendant. Thereafter the State issued subpoenas for defendant's and S.T.'s phone records in order to investigate defendant's testimony, obtained the records, and tendered copies to trial counsel. Additionally, although defendant alleged in a *pro se Krankel* motion that he was denied effective assistance when trial counsel did not obtain defendant's and Sutton's phone records, during the trial court's preliminary inquiry, the State stated that Sutton's and S.T's phone records were subpoenaed and provided to the defense.

¶ 27 Because the issue of S.T.'s phone records, and trial counsel's alleged failure to obtain them, are based on facts contained in the trial record, this claim could have been raised and determined on direct appeal. The issue is, therefore, forfeited in this postconviction proceeding. See *People v.*

*Davis*, 2014 IL 115595, ¶ 13 (the Act allows inquiry into constitutional issues arising from the original conviction that had not been raised and could not have been adjudicated on direct appeal; issues that could have been raised, but were not, are forfeited).

¶ 28    Forfeiture aside, however, defendant's petition was still properly dismissed because defendant failed to support the allegations as required by section 122-2 of the Act.

¶ 29    The State argues that defendant has not identified the source of the "Comprehensive Background Checks," or explained how he acquired these documents. The State further argues that the documents lack detail such as the dates and locations associated with each phone number.

¶ 30    Pursuant to section 122-2 of the Act, a postconviction petition "shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122-2 (West 2018). "The purpose of the affidavit, records, or other evidence requirement is to establish that a petition's allegations are capable of objective or independent corroboration." (Internal quotation marks omitted.) *Hodges*, 234 Ill. 2d at 10. The supporting material must (1) show that "the petition's allegations are capable of corroboration" and (2) identify "the sources, character, and availability of evidence alleged to support the petition's allegations." *Allen*, 2015 IL 113135, ¶ 34. The failure to attach the necessary supporting material or explain its absence is fatal to a postconviction petition and justifies its summary dismissal. *Collins*, 202 Ill. 2d at 66.

¶ 31    Here, defendant supports his assertion that trial counsel failed to investigate whether S.T. had other phone numbers with a "Comprehensive Background Check" which purports to list S.T.'s phone numbers and includes the phone number stipulated at trial. This document lists both a "Current Phone" number and other numbers labeled "More Phones," but contains no dates or

locations for those phone numbers. In fact, the document is undated and contains no identifying information such as a website or the name of the person or company that created it. Moreover, defendant does not explain how he obtained the "Comprehensive Background Check" for S.T. Rather, in his brief, defendant states without elaboration that his "investigation" revealed that S.T. had "other phone numbers."

¶ 32 The "Comprehensive Background Check" is insufficient to support defendant's ineffective assistance claim. The purpose of the requirement for affidavits, records, and other evidence is to ensure that a petition's allegations are capable of objective or independent corroboration. See *Hodges*, 234 Ill. 2d at 10. Here, defendant provides no details as to how the document was created or how he obtained it. Moreover, not only is the document itself undated, no dates are associated with the listed phone numbers, including S.T.'s purported "Current Phone" and the six other numbers listed in the "More Phones" category. Absent dates, it is unclear how this document supports defendant's allegation that S.T. had other phones at the time of the offenses in 2012.

¶ 33 Although we must take well-pled factual allegations in the petition and any supporting evidence as true at the first stage of postconviction proceedings unless positively rebutted by the record (*People v. Sanders*, 2016 IL 118123, ¶ 48), defendant must still set forth facts which can be corroborated and are objective in nature or explain why those facts are absent (see *Hodges*, 234 Ill. 2d at 10). In other words, absent a source for the "Comprehensive Background Check," or an explanation as to how he acquired the document, defendant has failed to provide a factual basis upon which to conclude that his allegation that S.T. had other phone numbers at the time of the incident is capable of objective corroboration. See *Allen*, 2015 IL 113135, ¶ 24 (quoting *Collins*,

202 Ill. 2d at 67) (a *pro se* defendant "must supply sufficient factual basis to show the allegations in the petition are 'capable of objective or independent corroboration' ").

¶ 34 Defendant has therefore failed to meet the requirements of section 122-2 of the Act, and his petition was properly dismissed as frivolous and patently without merit. See *Collins*, 202 Ill. 2d at 66 (the failure to comply with section 122-2 is fatal to a petition and "by itself justifies" summary dismissal).

¶ 35 Moreover, because defendant has failed to provide a sufficient factual basis upon which to support the allegations contained in the petition—that S.T. had access to other phone numbers at the time of the incident—his ineffective assistance claim is purely speculative. See *People v. Bew*, 228 Ill. 2d 122, 135 (2008) ("*Strickland* requires actual prejudice be shown, not mere speculation as to prejudice."). Here, defendant concludes, based upon an undated document from an unknown source, that S.T. had access to other numbers at the time of the incident. Absent a factual basis upon which to conclude that S.T. actually had access to other phone numbers at the time of the incident, defendant cannot establish either counsel's deficient performance for failure to investigate or prejudice. See *People v. Delton*, 227 Ill. 2d 247, 258 (2008) (broad conclusory allegations of ineffective assistance are not allowed under the Act).

¶ 36 Accordingly, the circuit court properly summarily dismissed defendant's *pro se* postconviction petition as frivolous and patently without merit when defendant provided no support for his allegation that he was arguably denied effective assistance by trial counsel's failure to investigate whether S.T. had access to other phone numbers at the time of the incident.

¶ 37 For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 38 Affirmed.